Kenneth J. Kelly
James S. Frank
Kenneth W. DiGia
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500

Terence K. McLaughlin
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendants
New York-Presbyterian Healthcare System, Inc.,
Herbert Pardes and Wayne Osten

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MASAHIRO NAKAHATA and DIANA GARDOCKI,    :

on behalf of themselves and all other employees similarly :   **ECF CASE**
situated,
                                                          :
                                        Plaintiffs,       :   Docket No. 10-cv-2661(PAC) (RLE)
                                                          :
                        - against -                       :
                                                          :
NEW YORK-PRESBYTERIAN HEALTHCARE          :
SYSTEM, INC., THE NEW YORK AND            :
PRESBYTERIAN HOSPITAL, HERBERT PARDES,    :
AND WAYNE OSTEN,                          :
                                                          :
                                        Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC.'S,
HERBERT PARDES' AND WAYNE OSTEN'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

                                                                                            PAGE

Preliminary Statement.................................................................................................1

The Allegations...........................................................................................................3

System, Inc.................................................................................................................3

Dr. Herbert Pardes .....................................................................................................4

Wayne Osten...............................................................................................................5

Argument ....................................................................................................................5

POINT I .......................................................................................................................5

    12(b)(6) STANDARDS ON A MOTION TO DISMISS ......................................5

POINT II......................................................................................................................8

    PLAINTIFFS FAIL TO ALLEGE ANY FACTS SHOWING
    THAT THE MOVING DEFENDANTS WERE THEIR "EMPLOYER" ..........................8

        A. Plaintiffs' FLSA and NYLL Claims Should be Dismissed
        Because Plaintiffs Fail to Plead Facts Sufficient to Show
        the Existence of an Employer-Employee Relationship .......................................8

          (i) Conclusory Allegations Without Factual Support that the Moving
            Defendants were an Employer Require Dismissal of the Complaint ...........8

          (ii) No "Party Plaintiff" Has Identified
            System, Inc. as His or Her Employer...........................................................11

          (iii) System, Inc. is not a Health Care Provider or an Employer .....................12

        B. Plaintiffs' Conclusory Allegations Are Insufficient To
        Establish That Dr. Pardes and Mr. Osten Are "Employers"
        Within the Meaning of the FLSA and NYLL.......................................................13

        C. Plaintiffs' Allegation That the Defendants Are an
        Integrated Enterprise Is Insufficient to Establish Liability
        As to Any Entity That Did Not Employ Plaintiffs..............................................18

Conclusion ................................................................................................................22

## Preliminary Statement

Defendant New York-Presbyterian Healthcare System, Inc. ("System, Inc.") is a not-for-profit corporation that does not have any employees and is prohibited in its corporate charter and by New York State healthcare regulations from operating hospitals or providing healthcare services. Defendants Herbert Pardes and Wayne Osten are senior executives employed by defendant The New York and Presbyterian Hospital ("NYPH" or "Hospital"). (Wayne Osten Affidavit, sworn to on November 12, 2010, ¶ 1; Bart Minsky Affidavit, sworn to on November 12, 2010, ¶ 11.)

System, Inc., Dr. Pardes and Mr. Osten move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Second Amended Complaint ("Complaint"), which seeks to recover unpaid wages allegedly due to the Plaintiffs. The Complaint should be dismissed because, in contravention of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), it fails to plead substantial and plausible facts establishing a joint employer relationship among the four named defendants (or among the 500-plus other entities misleadingly identified in the Complaint as "defendants").[1] (The moving defendants also join the motion of defendant NYPH to dismiss the Complaint for the reasons stated in NYPH's memorandum of law.)

The Complaint alleges that Masahiro Nakahata and Diana Gardocki[2] and the putative class members were not paid for unspecified meal periods and breaks through which

---

[1] The Complaint uses various definitions that are relevant to the argument below. "Named Defendants" refers to the two entities and two individuals listed in the caption. (Compl., ¶ 18.) "Health Centers" refers to the Named Defendants' purported "health care facilities and centers" listed in paragraph 19 of the Complaint. There are more than 250 such entities listed in that paragraph. "Affiliates" refers to the Named Defendants' purported "affiliated health care facilities and centers" listed in paragraph 20 of the Complaint. There are more than 250 additional such entities listed in that paragraph.

[2] Plaintiff Nakahata is a registered professional nurse ("RN") employed by NYPH pursuant to the terms of a collective bargaining agreement ("CBA") between the Hospital and the New York State Nurses Association ("NYSNA"). Pursuant to the CBA, Nakahata has been on a leave of absence since June 2007. Gardocki's employment as an RN terminated by the Hospital pursuant to the terms of the CBA in January 2010 when she retired. (Minsky Aff., ¶¶ 8, 9.)

they allegedly worked and, as a result, were denied "applicable premium pay" and pay at a rate higher than their base salary and overtime in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").  They also allege common law claims and violations of the Racketeer Influenced and Corrupt Organizations Act.

Although the Complaint names only four "Named Defendants," it asserts in conclusory fashion that the Named Defendants and the more than 500 so-called "defendants" are "the employer (single, joint or otherwise [sic])" of the Plaintiffs.  The Complaint fails to set forth, however, any specific facts or details supporting this patently incredible claim, and it should be dismissed.

The Complaint also seeks to impose liability on two individual corporate officers, Dr. Herbert Pardes and Wayne Osten, based on the implausible conclusion that these two individuals control all aspects of the day-to-day employment activities of the "New York-Presbyterian Healthcare System" defined by Plaintiffs to encompass more than 500 so-called "defendant" entities which are alleged to employ more than 52,000 persons in three states (Compl., ¶¶ 12, 18-20.)  Not only does the Complaint fail to allege any facts supporting this conclusory assertion, but Plaintiffs consistently misuse the term "New York-Presbyterian Healthcare System."

New York-Presbyterian Healthcare System (the "Healthcare System") refers to an unincorporated federation of autonomously operated high-quality hospitals, specialty institutes, and continuing care centers throughout New York, New Jersey and Connecticut.  Its members include academic affiliates of Weill Cornell Medical College and Columbia University College of Physicians and Surgeons who collaborate to improve patient care, medical education and research.  It offers physicians the opportunity to collaborate on health-related initiatives, offers

access to an on-line medical library, and conducts educational programs.  NYPH, as well as each of the member institutions that participates in the Healthcare System, is operated as a separate not-for-profit corporation.  Neither NYPH nor New York-Presbyterian Healthcare System, Inc. employs nor supervises the medical staff of the Healthcare System member institutions.  *See* the Healthcare System's website www.nypsystem.org.

**The Allegations**

Although comprised of 45 pages and 227 paragraphs, the conclusory allegations of the Complaint can be briefly summarized.  The gravamen of the Complaint is that NYPH and the other so-called "defendants" maintained policies or practices which resulted in employees performing work for which they were not compensated.  The Complaint indiscriminately uses the expression "New York-Presbyterian Healthcare System" or "defendants" to refer in blanket fashion to the four Named Defendants, and the "Health Centers" and "Affiliates," which encompass more than **500** entities.  As is evident from the names of these myriad entities, they are located in New York, New Jersey and Connecticut.  The Complaint does not specify which entity employed the Plaintiffs.  Rather, the Plaintiffs implausibly allege that they were employed by all of the so-called "defendants," without stating a single fact regarding their employment other than that they were "employed within this District." (Compl., ¶ 62.)  Indeed, the Complaint does not allege any essential facts about the Plaintiffs' employment, such as their titles, positions, dates of employment, pay, or how many hours they worked each week.

**System, Inc.**

System, Inc., in contrast with the Healthcare System, is a "Type B" not-for-profit corporation organized under New York law and is exempt from federal income taxation.  (Osten Aff., ¶ 2 & Ex. A.) As set forth in System, Inc.'s certificate of incorporation, it is organized

3

"exclusively for charitable, religious, educational and scientific purposes."[3] (*Id.*)    System, Inc.

is expressly <u>not</u> "authorize[d] . . . to establish, operate or maintain a hospital or to provide

hospital services or health-related services . . . as defined in and covered by Articles 28, 33, 36,

40 and 44, respectively, of the Public Health Law or Article 31 of the Mental Hygiene Law," and

it does not do so.    (*Id.*, Ex. A & ¶ 2.)    As a matter of law, System, Inc. cannot adopt or approve

of hospital operating policies and procedures, including personnel and compensation policies for

itself, much less for more than 500 other entities.    N.Y. Comp. Codes R. & Regs., tit. 10,

§ 405.1(c)(3).[4]    System, Inc. does not have (and never had) any employees.    (Osten Aff., ¶ 3.)

### Dr. Herbert Pardes

Dr. Herbert Pardes is the President and CEO of The New York and Presbyterian

Hospital. (Minsky Aff., ¶ 11.) The Complaint claims that he is an "employer" based solely on his

position (Compl., ¶ 50) and the wholly implausible allegations that he makes "decisions

concerning the [employment] policies [the more than 500 so-called] defendants adopt and the

implementation of those policies," and "is actively involved in the creation of the illegal policies

complained of in this case." (*Id.*, ¶¶ 46, 47.) However, the Complaint does not contain a single

fact identifying any of the employment policies or employment decisions Dr. Pardes allegedly

made and implemented across this tri-state agglomeration of more than 500 autonomous entities.

---

[3]  This Court may take judicial notice of public documents, such as corporate charters and certificates of incorporation. *See, e.g., Logicom Inclusive, Inc. v. W.P. Stewart & Co.,* No. 04 Civ. 0604, 2004 WL 1781009, at *5 (S.D.N.Y. Aug. 10, 2004) (certificate of registration on file with the New York Secretary of State); *see also Kramer v. Time Warner Inc.,* 937 F.2d 767, 773-74 (2d Cir. 1991) (SEC filings); *Allstate Ins. Co. v. Estate of Levesque,* No. 8:08-CV-2253-T-33EAJ, 2010 WL 2978037 (M.D. Fla. July 19, 2010) (articles of incorporation); *In re Merck & Co.,* Civ. A. Nos. 05-1151, 05-2368, 2006 WL 1228595, at *14 n.6 (D.N.J. May 5, 2006), *rev'd on other grounds sub nom., In re Merck & Co. Secs., Derivatives & ERISA Litig.,* 493 F. 3d 393 (3d Cir. 2007) ("[T]his Court can take judicial notice of Merck's corporate charter" on a motion to dismiss) (citations omitted).

[4]  The conclusory and generic allegation that the "defendants" share common management and "have common ownership," does not suffice. Plaintiffs must, but do not, identify the individuals who allegedly control the *labor relations* policies of the defendants. (Compl., ¶¶ 30-31.) Moreover, the Complaint does not (nor could it) identify any person who allegedly shares management of the more than 500 "defendant" entities, nor does the Complaint identify these alleged managers' titles or duties. (*Id.*, ¶ 30.) In fact, Plaintiffs do not in any way indicate the manner in which the alleged shared management of the over 500 "defendants" functions. (*Id.*, ¶ 30.)

Indeed, the bulk of the allegations pertaining to him have nothing to do with individual liability under the FLSA or NYLL. (*See, e.g.,* Compl. ¶¶ 43-45, 49 (second sentence).)

### Wayne Osten

Plaintiffs allege that Wayne Osten is the Senior Vice President and Director for New York-Presbyterian Healthcare System (which, as discussed previously, is not even an entity). (Compl., ¶ 51.) The Complaint alleges that, based on nothing more than his title, Mr. Osten is an "employer." (*Id.,* ¶ 61.). There are, however, no specific facts alleged supporting this conclusion. While the Complaint alleges that "[i]n concert with others, Mr. Osten has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training and payroll" (*id.,* ¶ 59), and that he "is actively [sic] in creating and/or maintaining the illegal [employment] policies complained of in this case" (*id.,* ¶ 60), the Complaint does not identify even one specific employment policy that Mr. Osten allegedly created. Nor does the Complaint set forth Mr. Osten's alleged role in creating employment policies covering more than 500 entities or the decisions he allegedly made relevant to Plaintiffs' and some 52,000 others' wage and hour claims. As with Dr. Pardes, most of the allegations pertaining to Mr. Osten have nothing to do with individual liability under the FLSA or NYLL. (*See, e.g.,* Compl. ¶¶ 52, 53 (second sentence), 54-58.)

### Argument

### POINT I

### 12(b)(6) STANDARDS ON A MOTION TO DISMISS

Federal Rule of Civil Procedure Rule 8(a) requires that a "complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (*quoting Ferro v. Ry. Express*

*Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)).  *See also Twombly,* 550 U.S. at 555.  The Supreme Court has held that "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 556 n.3.  (citation omitted.)  Thus, "[w]hile a complaint . . . does not need detailed factual allegations, . . . 'plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.' " *Id.* at 555 (internal quotation marks and citations omitted).  Notwithstanding the liberal pleading standards in the Federal Courts, courts in this Circuit have held that vague, conclusory and speculative allegations, such as those that permeate the Complaint, are subject to dismissal under Rule 12(b)(6).  *See, e.g., Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir. 2006) (" '[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.' ") (citation omitted); *Curto v. Bender*, No. 04-CV-26S, 2005 WL 724156, at **1, 12 (W.D.N.Y. Mar. 28, 2005), *aff'd,* 231 F. App'x 93 (2d Cir. 2007) (same).

        While this Court construes the pleadings in a light most favorable to a plaintiff and accepts as true at this stage well-pleaded allegations of fact in a complaint and any reasonable inferences to be drawn from such facts, legal conclusions cannot be taken as true merely because they are cast in the form of factual allegations, *Twombly,* 550 U.S. 555-56, and conclusionary allegations are to be rejected as a matter of law.  *See, e.g., Makowski v. United Bhd. of Carpenters and Joiners of Am.,* No. 08 Civ. 6150, 2010 WL 3026510 (S.D.N.Y Aug. 2, 2010) (Crotty, J.); *Compania Sud Americana de Vapores S.A. v. Global Terminal & Container Servs., LLC,* No. 09 Civ. 7890, 2010 WL 2545764 (S.D.N.Y. June 11, 2010) (Crotty, J.).

Moreover, even where a complaint does contain some factual allegations, it should be dismissed

for failure to state a claim under Fed. R. Civ. P. 12(b)(6) if the factual allegations do not raise the

"right to relief above the speculative level." *Id.* at 555 (citation omitted).

In *Iqbal*, 129 S. Ct. 1937, the Supreme Court reemphasized the pleading

requirements enunciated in *Twombly*, underscoring that: (1) a pleading offering only "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action" does not comply

with Fed. R. Civ. P. 8; (2) while Fed. R. Civ. P. 8 does not require detailed factual allegations,

it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation

. . ."; and (3) a complaint will not survive a motion to dismiss if it contains merely "naked

assertions devoid of further factual enhancement." *Id.* at 1949 (internal quotation marks and

citations omitted). As the Supreme Court explained:

> First, the tenet that a court must accept as true all of the allegations
> contained in a complaint is inapplicable to legal conclusions.
> Threadbare recitals of the elements of a cause of action,
> supported by mere conclusory statements, do not suffice. . . . Rule 8
> marks a notable and generous departure from the hyper-technical,
> code-pleading regime of a prior era, but it does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions. Second, only a complaint that states a plausible claim
> for relief survives a motion to dismiss. . . . Determining whether a
> complaint states a plausible claim for relief will . . . be a context-
> specific task that requires the reviewing court to draw on its
> judicial experience and common sense. . . . But where the well-
> pleaded facts do not permit the court to infer more than the mere
> possibility of misconduct, the complaint has alleged-but it has not
> 'show[n]' - that the pleader is entitled to relief.

*Id.* at 1949-50 (internal citations omitted). *See also Ruston v. Town Bd. for Skaneateles,* 610 F.3d

55, 58-59 (2d Cir. 2010), *petition for cert. filed,* No. 10-470 (Oct. 6, 2010).

**POINT II**

**PLAINTIFFS FAIL TO ALLEGE ANY FACTS
SHOWING THAT THE MOVING DEFENDANTS
WERE THEIR "EMPLOYER"**

**A.      Plaintiffs' FLSA and NYLL Claims Should be Dismissed Because Plaintiffs Fail to
        Plead Facts Sufficient to Show the Existence of an Employer-Employee Relationship**

      **(i)      Conclusory Allegations Without Factual Support that the Moving
        Defendants were an Employer Require Dismissal of the Complaint**

The Complaint fails to plead the essential basis on which FLSA and NYLL claims

may lie against System, Inc., Dr. Pardes and Mr. Osten, namely, the existence of an employer-

employee relationship.  Five short paragraphs, laden with legal conclusions and devoid of facts,

attempt to sweep the moving defendants and all 500 so-called "defendants" into the category of

a single "employer." (Compl., ¶¶ 32-36.)  These allegations ignore *Twombly, Iqbal* and common

sense.

Only a person or entity that is in "reality" an "employer" is an employer within

the meaning of the FLSA or NYLL.  *Barfield v. N.Y.C. Health and Hosp. Corp.,* 537 F.3d 132,

141 (2d Cir. 2008).  An employer "employs" an individual only when it "suffer[s] or permit[s]"

that individual to work for it.  29 U.S.C. § 203(g).  The "determination of whether an employer-

employee relationship exists for purposes of the FLSA [or NYLL] should be grounded in

'economic reality.' " *Barfield,* 537 F.3d at 141 (citations omitted).  It is determined by the facts

not conclusions.    This "economic reality" test examines whether a defendant has actual control

over the employment of an individual such that an employer-employee relationship exists.

Courts consider whether a putative defendant (1) has the power to hire and fire the employee, (2)

supervises and controls the employee's work schedules or conditions of employment, (3)

determines the rate and method of payment, and (4) maintains the employee's employment

records. *Id.* at 142 (citations omitted). No single factor is determinative.[5] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

Here, the Complaint does not identify which of the over 500 entities identified as so-called "defendants" actually employed Plaintiffs, and thus does not even specifically allege that System, Inc. or the two individual defendants were their employer. The skeletal allegations at paragraphs 32 through 36 of the Complaint merely echo the FLSA statute, and allege that the "Healthcare System" was a joint employer. Plaintiffs do not allege who at System, Inc. hired or could fire them (or any other class member, for that matter). There are no allegations as to who at System, Inc. supervised or controlled their work schedules or conditions of employment. The Complaint is also silent as to who determined Plaintiffs' rate and method of compensation, or who maintained their employment records, or who paid them. The conclusory allegation that each of the more than 500 entities listed in paragraphs 19 and 20--from Park Slope Chiropractic, P.C. to the New Jersey gift shop--simultaneously and jointly employ all class members is facially implausible and legally insufficient. *See, e.g., Chen v. Domino's Pizza, LLC*, Civ. A. No. 09-107, 2009 WL 3379946, at *4 (D.N.J. Oct. 16, 2009) (mere allegation that defendants were employers not sufficient to show employment relationship); *Leber v. Berkley Vacation Resorts, Inc.*, No. 2:08-CV-01752-PMP-PL, 2009 WL 2252517, at *5 (D. Nev. July 27, 2009) (dismissing plaintiffs' FLSA claim for failure to allege which defendant was their employer); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 775-76 (D. Md. 2008) (granting defendant Regal's motion to dismiss where the economic reality regarding the plaintiffs and Regal was insufficient to find an employer-employee relationship).

---

[5] Because the NYLL applies the same standards of "employer" as the FLSA, the Plaintiffs' NYLL claims must be dismissed as well. *See, e.g., Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092, 2007 WL 4358456, at *4 (S.D.N.Y. Dec. 10, 2007).

Much like the allegations here, the plaintiffs in *Leber* alleged in conclusory fashion that the defendants were " 'a common or joint enterprise or partnership that is collectively, jointly and severally liable to all of the putative plaintiffs.' " *Id.* at \*5. Citing *Twombly* and *Iqbal*, the court rejected this assertion because:

> [t]he Complaint's only factual allegations are that Defendants all are engaged in the sale of timeshare interests and have similar compensation practices for their salespersons. . . . Taking such allegations as true, they do not state a plausible entitlement to relief against any Defendant as any Plaintiff's employer or joint employer. Plaintiffs have not alleged which Defendant is their employer or any facts supporting joint employment by any of the other Defendants. The fact that all Defendants conduct business in the same industry and utilize similar compensation schemes is insufficient to establish joint employer status.

*Id.*

Notwithstanding this clear precedent, the Complaint claims that System, Inc. (and over 500 other separate "entities" of some kind or another) are "joint employers" that, *inter alia,* violated the FLSA and NYLL by allegedly failing to pay Plaintiffs certain wages to which they claim entitlement. The Complaint, however, does not assert a single allegation specific to System, Inc. *Iqbal, Twombly* and common sense say that System, Inc. should not have to be further burdened by these non-"plausible" allegations.

Plaintiffs have failed to allege any concrete facts establishing that there is (or ever was) an employment relationship between them and System, Inc. Plaintiffs are required to go beyond boilerplate conclusions and plead facts supporting their allegations. Where a plaintiff fails to do so, courts have not hesitated to dismiss the complaint. *See, e.g., Chen*, 2009 WL 3379946, at \*5 (complaint dismissed where plaintiffs made conclusory allegation that defendants were joint employers); *Hibbs-Rines v. Seagate Techs, LLC*, No. C 08-05430SI, 2009 WL 513496, at \*5 (N.D. Cal. Mar. 2, 2009) ("Plaintiff's joint employer allegations are insufficient

because they are legal conclusions, not factual allegations. . . . While plaintiff is not required to conclusively establish that defendants were her joint employers at the pleading stage, plaintiff must at least allege *some* facts in support of this legal conclusion.") (citations omitted, emphasis in original); *Leber*, 2009 WL 2252517, at *5 ("Plaintiffs have alleged Defendants are 'a common or joint enterprise or partnership that is collectively, jointly and severally liable to all of the putative plaintiffs described herein'. . . . This allegation is conclusory and supported by no factual allegations.")  Since Plaintiffs have, like the plaintiffs in *Hibbs-Rines*, *Leber* and *Chen*, made nothing other than conclusory allegations, the Complaint should be dismissed as against System, Inc.

     (ii)     **No "Party Plaintiff" Has Identified System, Inc. as His or Her Employer**

     The allegations in the Complaint that System, Inc. (and over 500 other separate "entities" of varying character across three states) employed the named Plaintiffs and other members of the putative class is further belied by the fact that not one of the almost 150 "party plaintiffs" who seeks to become part of this action has specifically identified any particular "defendant" as that person's employer. Rather, the "Consent to Become a Party Plaintiff" form states nothing more than: "I am/was employed by New York Presbyterian Healthcare System." This, however, is meaningless given that (1) The "New York Presbyterian Healthcare System" is not a legal entity and is not a party to this action; (2) System, Inc. in fact has no employees; and (3) there is no indication that any person signing these forms is either "similarly situated" to the named Plaintiffs or reviewed any version of the Complaint and understood the scope of what they were claiming. Thus, even the "Consent to Become a Party Plaintiff" forms do not provide any factual support for Plaintiffs' conclusory allegations that they were employed by System, Inc.

### (iii)   System, Inc. is not a Health Care Provider or an Employer

The Complaint should also be dismissed because System, Inc. is not a hospital and does not provide health care. According to its charter and as a matter of law, System, Inc. cannot be a hospital. It does not operate "health care facilities and centers," or "affiliated health care facilities and centers," let alone more than 500 of them. (Compl., ¶¶ 19, 20, 23.) Nor is it "engaged in the operation of hospitals and/or the care of the sick," nor can it be. (Id., ¶¶ 22, 28.) Nor does System, Inc. control the terms and conditions of employment of some 52,000 employees who allegedly work at the over 500 "health care facilities and centers" whose names fill up 10 pages in the Complaint. (Id., ¶¶ 19, 20, 23.) The Complaint fails to allege any facts to the contrary, let alone "plausible" or sensible ones.

The Complaint's allegations that System, Inc. employed the named Plaintiffs or any of the other putative class members are even more implausible when Plaintiffs' specific employment circumstances are examined. Plaintiffs were employed by NYPH as professional salaried registered nurses. (Minsky Aff., ¶¶ 5, 8, 9 & Ex. A, §§ 1, 6, Schedule A.) Given that System, Inc. is not a hospital and does not provide healthcare services, and is not permitted to do so as stated above, these individuals could not have had any employment relationship with it.

Moreover, as shown by its charter, System, Inc. is a "Type B" *not-for-profit* corporation. (Osten Aff., ¶ 2 & Ex. A.) As such, it is not "owned" by anyone, does not generate "profits" from the operation of medical facilities, nor does it "engage in a joint venture . . . established through [its] conduct in sharing the profits and losses." (Compl., ¶¶ 31, 38.)

Plaintiffs try to supply the essential but missing allegations by relying on the Healthcare System's website. The website of an unincorporated association of disparate entities has no legal significance and cannot establish a joint employment relationship among the so-called "defendants," the Hospital, or System, Inc. *See, e.g., Mendez v. Timberwood Carpentry &*

12

*Restoration, LLC,* Civ. A. No. H-09-490, 2009 WL 4825220, at *8 (S.D. Tex. Dec. 9, 2009) (in granting summary judgment that defendant was not joint employer with other defendant, court held that "plaintiffs' reference to [defendant's] website is irrelevant and has no bearing on its 'employer' status").

The reality is that System, Inc. does not have any employees.  (Osten Aff., ¶ 3.) It never employed either of the named Plaintiffs.  To the contrary, Plaintiffs were employees of NYPH.  (Minsky Aff., ¶ 8, 9.)

**B.      Plaintiffs' Conclusory Allegations Are Insufficient To Establish That Dr. Pardes and Mr. Osten Are "Employers" Within the Meaning of the FLSA and NYLL**

Individual officers of substantial corporations are not deemed employers of that corporation's employees under the FLSA pursuant to the Second Circuit's economic reality test. *Herman,* 172 F.3d at 139.   Bare allegations based solely on an individual's job title and presumed duties are insufficient to make a claim that an individual is an "employer." *Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474, 2001 WL 314622, at *2 (S.D.N.Y. Mar. 30, 2001).  Even more factual substantiation is required to deem an executive the "employer" of more than 500 *other* entities' employees spread over three states as the Complaint here sweepingly alleges. The Complaint is devoid of any such facts.

Plaintiffs' broad-brush allegations against Dr. Pardes and Mr. Osten are clearly deficient. Regarding Dr. Pardes, the Complaint makes numerous irrelevant allegations regarding his fundraising activities (Compl., ¶ 43), his activities promoting quality of care (*id.*, ¶ 44), his public statements regarding health care reform (*id.*, ¶ 45) and how he "intends to save money" regarding hiring.  (*Id.*, ¶ 49.)  The Complaint then leaps to the conclusion that Dr. Pardes "is actively involved in the creation of the illegal policies complained of in this case." (*Id.*, ¶ 47.)

The Complaint does not allege any facts to substantiate the claim that Dr. Pardes makes decisions concerning employment policies of the separately-licensed and separately-operated so-called "defendants." The Complaint is devoid of a single fact to support the fantasy that the President and CEO of NYPH plays any role in the implementation of the employment policies at the so-called "defendant" hospitals. (Compl., ¶ 46.) There are no facts alleged to support the claim that Dr. Pardes "is actively involved in the creation of the illegal [employment] policies complained of in this case" (*id.*, ¶ 47), or that he "hire[s] or fire[s] employees" at NYPH much less at any of the other so-called "defendants" (*id.*, ¶ 48), or that he "has the authority to, and does, make decisions that concern defendants' [disparate and independent] operations, including functions related to employment, human resources, training, and payroll." (*Id.*, ¶ 49.) The Complaint does not allege that Dr. Pardes in fact hired or fired any Plaintiffs or any Class Members, nor does it name a single employee Dr. Pardes allegedly hired, fired or underpaid out of the more than 52,000 employees claimed to be part of this case. (*See* Compl., ¶¶ 41-50.) These conclusory allegations are legally insufficient. *Iqbal*, 129 S. Ct. at 1949.

The Complaint's allegations regarding Mr. Osten are equally specious. They merely allege that "[i]n concert with [unnamed] others, Mr. Osten has the authority to, and does, make decisions that concern [the 500] defendants' operations, including functions related to employment, human resources, training, and payroll." (Compl., ¶ 59.) This fails to state a claim as a matter of law. The allegation that Mr. Osten "is actively [sic] in creating and/or maintaining the illegal [employment] policies complained of in this case" (*id.*, ¶ 60) does not cure the legal deficiency of the Complaint. Plaintiffs do not identify the specific employment policies nor do they elaborate on Mr. Osten's role in creating these policies. Indeed, the bulk of the allegations

pertaining to Mr. Osten are irrelevant and have nothing to do with liability under the FLSA or NYLL. (*id.*, ¶¶ 52-58.)

As with System, Inc., the allegations that Dr. Pardes and Mr. Osten, are each individually "joint employers" of every employee of the over 500 "defendants" are implausible. In fact, the size of the vast, artificially constructed healthcare empire over which Plaintiffs claim Dr. Pardes and Mr. Osten rule requires *more*, not fewer, factual allegations in order to plead a plausible claim. "Where the relationship between the putative employer [*i.e.*, the natural person defendant] and the plaintiff employee is more attenuated and the size of the corporation larger, employer liability may not be found." *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2009 WL 3153150, at *4 (W.D.N.Y. Sept. 30, 2009), *adopted in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) (citation omitted). *See also Bravo*, 2001 WL 314622, at *2 (dismissing complaint against Donna Karan individually because plaintiffs did not allege any facts establishing "her power to control the plaintiff workers.") *See also Herman*, 172 F.3d at 139.

Individual officers or directors of the corporation may only be "deemed employers under the FLSA where the individual has overall operational control of … the employees' salaries and makes hiring decisions." *Tracy*, 2009 WL 3153150, at *4 (internal quotation marks and citations omitted).[6] Significantly, "bare allegations of an individual's control over employee-plaintiffs that are based solely upon the individual's job title and presumed duties are insufficient to establish that the individual is an 'employer' under [*Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132 (2d Cir. 1999)]'s economic reality test." *Tracy*, 667 F. Supp. 2d at 247 (citation omitted).

---

[6] *Tracy* involved another action filed by Plaintiffs' counsel here, alleging wage and hour violations against a home mortgage employer.

The decision in *Tracy* is instructive. There, the plaintiffs sought leave to amend their complaint, adding the defendant company's (1) Chairman of the Board; (2) CEO; and (3) Vice President of Human Relations. *Tracy*, 2009 WL 3153150, at **5-6. Particularly, the plaintiffs alleged that the Chairman and the CEO:

> each (1) must have been "involved in the creation and/or maintenance of the illegal policy complained of in this case"; must have "actively advise[d] defendants' agents on the enforcement of the illegal policies"; and must have "actively ensure[d] defendants' compliance or non-compliance with . . . the FLSA"; . . .and (2) must have had the authority to make human resources policy decisions, to make decisions concerning recordkeeping, to make decisions concerning training and education "across NVR" and to make decisions concerning "payroll functions".

*Id.* at *5. As it related to the Vice President of Human Relations, the plaintiffs alleged that he "made decisions concerning employees' schedules, hours and standard benefit levels." *Id.* at *6.

The Magistrate Judge denied the motion to amend with respect to both the Chairman of the Board and the CEO. *Id.* The court held that the plaintiffs failed to allege any facts to support the assertion that the Chairman and CEO "ever hired, fired or supervised 'the workers in question.' " *Id.* at *5. Rather, the court held that the sole factual support for the plaintiffs' allegations was the mere fact that the proposed defendants held the positions of Chairman and CEO, respectively. The court found such allegations wholly inadequate:

> In other words, upon careful analysis, the complaint asserts little more than because Schar was Chairman and Saville was President of NVR, then each must have had authority to take the actions that comprise the "economic realities" test, and that because each had the authority to take those actions, then each must have in fact taken those actions. *To accept the adequacy of these allegations would license suit under the FLSA against every high level officer and board member of large public companies simply because of the position the individual holds.* Although the definition of employer under the FLSA is indeed broad, I do not believe that it is this broad or unbounded by the requirements recently enunciated in *Iqbal* and *Twombly*.

*Id.* at \*5 (emphasis added).  On appeal, the District Court affirmed the Magistrate Judge, holding that "amendment of the complaint to add NVR's Chairman of the Board and Chief Executive Officer would be futile, because NVR has failed to allege sufficient operational control or involvement in the relevant corporate policies by either one to withstand a motion to dismiss for failure to state a claim." *Tracy*, 667 F. Supp. 2d at 246.

The court then went one step further and <u>declined</u> to accept the Magistrate Judge's recommendation permitting the plaintiffs to add the Vice President of Human Relations as an "employer." *Id.*  The court held that plaintiffs' allegation that the Vice President of Human Relations "had the general authority to hire and/or fire employees, and that he maintained employee records" wholly insufficient to state a claim. *Id.* at 247. The District Judge found fault with the plaintiffs' failure to allege that the Vice President of Human Relations hired any of them, nor did they provide any evidence that the Vice President of Human Relations exercised control over their work schedules, conditions of employment, and compensation:

> [M]ere boilerplate allegations that an individual meets the various prongs of the economic reality test stated solely upon information and belief and without any supporting details - essentially   "a formulaic recitation of the elements of a cause of action" - are insufficient to raise plaintiffs' right to relief "above a speculative level" with respect to that individual's liability as an employer under the FLSA.

*Id.* (citation omitted). *See also Bravo*, 2001 WL 314622, at \*2 (dismissing complaint against individual because plaintiffs alleged no facts establishing power to control the plaintiffs); *Wood v. TriVita*, No. CV-08-0765-PHX-SRB, 2009 WL 2106291, at \*\*3-4 (D. Ariz. June 22, 2009)

(denying plaintiff's motion to join individual defendants because the proposed allegations were "insufficient to show that the additional defendants were joint employers for purposes of the FLSA.")[7]

As the court held in *Tracy*, Plaintiffs' boilerplate allegations simply fail to pass muster under *Iqbal* and *Twombly*. *Tracy*, 667 F. Supp. 2d at 247.   They are nothing more than "a formulaic recitation of the elements of a cause of action" and are insufficient to raise plaintiffs' right to relief "above the speculative level" with respect to that individual's liability as an employer under the FLSA. *Twombly*, 550 U.S. at 555 (citations omitted).  Dr. Pardes and Mr. Osten should be dismissed from the action.

**C.     Plaintiffs' Allegation That the Defendants Are an Integrated Enterprise Is Insufficient to Establish Liability As to Any Entity That Did Not Employ Plaintiffs**

Plaintiffs try to avoid their fatal pleading deficiency by alleging that the various defendants are "joint employers" merely due to their participation in the New York-Presbyterian Healthcare System, which Plaintiffs style in typical conclusory fashion as an "integrated enterprise" and/or "joint venture." (Compl., ¶¶ 18-40.) Not only is this not sufficient under the pleading standards, but courts have rejected the theory that entities comprising an "enterprise" that gives rise to FLSA coverage, should be jointly and severally liable to pay wages of another

---

[7] The formulaic nature of Plaintiffs' allegations against Dr. Pardes and Mr. Osten is further demonstrated by comparing those allegations with the allegations Plaintiffs' counsel have directed at corporate officers in at least five other cases they have pending against New York Metropolitan area healthcare systems. The Amended Complaints in those other cases invariably name as defendants an executive officer and/or a human resources officer of a defendant healthcare system.  In each of those cases, the complaints relating to the authority and functions of the executive officer and/or human resources officer are similar, if not identical in some cases, to the allegations here pertaining to Dr. Pardes and Mr. Osten. *See Megginson v. Westchester Medical Center, et al.*, No. 7:10-cv-02683 (S.D.N.Y.), Am. Compl., ¶¶ 41-60;  *Alamu v. The Bronx-Lebanon Hospital Center, et al.*, No. 10-cv-3247 (S.D.N.Y), Am. Compl., ¶¶ 41-63; *Yarus v. New York City Health and Hospitals Corp., et al.*, No. 10-cv-02662 (S.D.N.Y), Am. Compl., ¶¶ 39-51; *Wolman v. Long Island Health Network, Inc.*, No. 2:10-CV-01326 (E.D.N.Y.), Am. Compl., ¶¶ 37-44; and *Sampson v. Medisys Health Network Inc., et al.*, No. 2:10-cv-01342 (E.D.N.Y.), Am. Compl., ¶¶ 40-63. The mass-produced nature of these pleadings, none of which provides the requisite detail, is precisely the insufficient "formulaic recitation" of the elements of a claim that was condemned in *Twombly*. (*See Twombly*, 550 U.S. at 555).

entity's employees solely because they are members of the "enterprise." *See Patel v. Wargo*, 803 F.2d 632, 635 (11th Cir. 1986); *Rogers v. KAR Holdings, Inc.*, No. 8:08-cv-602-T-30 TGW, 2008 WL 4059767, at *3 (M.D. Fla. Aug. 27, 2008). Plaintiffs simply misapprehend the concept of enterprise coverage, which relates to whether the FLSA even applies in the first instance to a particular employer-employee relationship, including an "enterprise" as defined in 29 U.S.C. § 203(r).

In *Patel*, the plaintiff was employed by one defendant but argued that another defendant was jointly liable for the FLSA violations committed by the plaintiff's employer because, *inter alia*, both were part of the same section 203(r) "enterprise." The court rejected the plaintiff's "enterprise theory" of liability, stating that "[t]here is no case holding that the individual entities which make up an enterprise should be jointly and severally liable for another entity's employees solely because they are members of the enterprise." *Patel*, 803 F.2d at 635. The analysis of liability as an employer under the FLSA, the court concluded, is different than the analysis of the existence of an enterprise under the FLSA. *Id.*

First, the court noted that the FLSA "premises liability on an employer-employee relationship." *Id.* "Thus, the obligation is on each employer to pay 'each of *his* employees.' . . . There is no suggestion in the language of the statute that an employer is responsible to other employers' employees, unless of course there is a joint employer relationship." *Id.* at 365-36 (citation omitted). Second, the court analyzed the definition of an enterprise and noted that the criteria for establishing an enterprise [for coverage purposes] are much broader than those for establishing liability to pay wages. *Id.* at 636. The court found that Congress' sole purpose in including the enterprise analysis in the FLSA was to expand the scope of the statute's coverage in order to afford more persons the benefits of the statute, not to make employers liable for the

employees of a separate entity in the enterprise: "The finding of an enterprise is relevant only to

the issue of coverage.  Liability is based on the existence of an employer-employee relationship."

*Id.* at 637. The *Patel* court concluded:

> [t]he wisdom of our conclusion is apparent when it is realized that
> a small snack bar is part of an enterprise which also includes a
> large bus terminal as a separate entity, . . . and that a small leased
> department is part of an enterprise which also includes as a
> separate entity a large department store. . . . If Patel's theory were
> correct, the small snack bar or the small leased department would
> be liable to the many employees of the large bus terminal or the
> large department store enterprise notwithstanding the fact that the
> small snack bar or leased department was under entirely separate
> ownership from the larger entities in the enterprise.

*Id.* at 636-37.  The wisdom of that conclusion is immediately apparent here.  To find that over

500 different so-called "defendants" are all one employer would impose liability on one entity

for another entity's employees, or would impose liability, *e.g.*, for NYPH's employees on, for

example, the New Jersey-based Valley Hospital gift shop, gyms, a credit union, various property

companies, and the travel center that are all styled as "defendants."  (Compl., ¶¶ 19, 20.)

> Following the holding in *Patel*, the court in *Rogers* likewise concluded that:

> Plaintiffs' Complaint lacks any allegations that either KAR or
> IAAI employed Plaintiffs, either expressly or as a matter of
> economic reality. As held in *Patel*, the fact that KAR and IAAI
> may have comprised an enterprise for FLSA purposes does not
> make them liable for any failure on the part of ADESA to
> appropriately compensate its employees. Absent any allegations
> that an employer-employee relationship existed between KAR or
> IAAI and a Representative Plaintiff, the Court concludes
> Defendants Motions [to dismiss] should be granted.

*Rogers*, 2008 WL 4059767, at *3.  *See also Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092

(NRB), 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007) (dismissing defendants in wage-

hour action where complaint failed to sufficiently allege joint employer status: "pleading a joint

venture does not trigger joint employer status because it is possible for joint ventures to separately employ different people").

        Following *Patel, Rogers* and *Cannon*, even if Plaintiffs had adequately alleged that the so-called defendants constitute an enterprise (which they do not), Plaintiffs still must factually allege the existence of an employer-employee relationship with each member of the alleged "integrated enterprise" or "joint venture" under *Barfield* and *Herman* in order for each of them to be liable to Plaintiffs. Plaintiffs have simply failed to do so, with regard to System, Inc., Dr. Pardes or Mr. Osten, as demonstrated above.

# CONCLUSION

For the foregoing reasons, Defendants New York-Presbyterian Healthcare System, Inc., Herbert Pardes and Wayne Osten respectfully request that the Second Amended Complaint be dismissed as against them.

New York, New York
November 15, 2010

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: /s/ Kenneth J. Kelly
   Kenneth J. Kelly
   James S. Frank
   Kenneth W. DiGia
250 Park Avenue
New York, New York  10177-1211
 (212) 351-4500

WILLKIE FARR & GALLAGHER

By: /s/ Terence K. McLaughlin
   Terence K. McLaughlin

787 Seventh Avenue
New York, NY 10019
(212) 728-8000

Attorneys for Defendants: New York-Presbyterian
Healthcare System, Inc., Herbert Pardes and Wayne Osten