Kenneth J. Kelly
James S. Frank
Kenneth W. DiGia
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500

Terrence K. McLaughlin
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York  10019
(212) 728-8000

Attorneys for Defendant
The New York and Presbyterian Hospital

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MASAHIRO NAKAHATA and DIANA GARDOCKI,            :

on behalf of themselves and all other employees similarly :   ECF CASE
situated,                                         :
                                                  :
                    Plaintiffs,                   :
                                                  :   Docket No. 10-cv-2661(PAC) (RLE)
          - against -                             :
                                                  :
NEW YORK-PRESBYTERIAN HEALTHCARE                  :
SYSTEM, INC., THE NEW YORK AND                    :
PRESBYTERIAN HOSPITAL, HERBERT PARDES,            :
AND WAYNE OSTEN,                                  :
                    Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

### DEFENDANT THE NEW YORK AND PRESBYTERIAN HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND (6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

NY:4607895v4

# **TABLE OF CONTENTS**

Page

Preliminary Statement ........................................................................................................... 1

The Allegations.................................................................................................................... 3

Argument............................................................................................................................. 4

POINT I

THE COMPLAINT FAILS TO STATE A CLAIM UNDER
THE FLSA OR THE NYLL.................................................................................................. 4

A.  Plaintiffs' FLSA Claims Are Not Sufficiently Pleaded.......................................... 4

B.  Plaintiffs' NYLL Claims Are Not Sufficiently Pleaded ......................................... 8

POINT II

THE ALLEGED FLSA, NYLL AND COMMON LAW CLAIMS REST ON
AN INTERPRETATION OF COLLECTIVE BARGAINING AGREEMENTS
AND THUS ARE BARRED BY SECTION 301 OF THE LABOR MANAGEMENT
RELATIONS ACT ................................................................................................................ 9

A.  The CBA Relates Directly to Plaintiffs' Claims.................................................. 10

   (i)   The CBA Provides that Nurses are Salaried Employees ............................. 10

   (ii)  Rest and Meal Periods ................................................................................ 12

B.  The NYLL Claims Are Preempted ....................................................................... 13

C.  The FLSA Claims Are Barred by Plaintiffs' Failure to use the
    Mandatory Grievance and Arbitration Procedure of the CBA .............................. 14

D.  The Common Law Claims Are Preempted............................................................. 15

   (i)   Breach of Implied and/or Express Oral Contract and
        Implied Covenant of Good Faith and Fair Dealing (Claims IV-VI) ................ 15

   (ii)  Quantum Meruit and Unjust Enrichment/Restitution
        (Claims VII and VIII)................................................................................. 17

(iii) Fraud and Negligent Misrepresentation (Claims IX and X)............................................18

(iv) Conversion (Claim XI) ......................................................................................................20

E.  The Claims Which are Barred by the LMRA Must be
Dismissed for Failure to Exhaust Administrative Remedies.................................................21


POINT III

PLAINTIFFS' ALLEGED COMMON LAW CLAIMS FAIL.......................................................22

A. Plaintiffs' Common Law Claims are Preempted by the FLSA ...............................................22

B. Even if Plaintiffs' Common Law Claims are not Preempted,
they are Insufficiently Pleaded and Should be Dismissed.......................................................24

(i)  Plaintiffs Have Failed to State A Viable Claim
For Breach of Contract ....................................................................................................24

(ii) Plaintiffs' Claim For Breach of Implied Covenant of Good Faith
and Fair Dealing Should Be Dismissed ..........................................................................26

(iii) Plaintiffs' Quasi-Contract Claims for Quantum Meruit and
Unjust Enrichment/Restitution Should Be Dismissed.....................................................27

(iv) Plaintiffs' Fraud Claim Should Be Dismissed................................................................29

(v)  Plaintiffs' Negligent Misrepresentation Claim Should Be Dismissed...........................32

(vi) Plaintiffs' Conversion Claim Should Be Dismissed.......................................................33


POINT IV

PLAINTIFFS' ESTOPPEL CLAIM FAILS AS A MATTER OF LAW......................................34


POINT V

PLAINTIFFS' RICO CLAIM FAILS .........................................................................................35

A. Plaintiffs' RICO Claim Suffers from Multiple Pleading
Flaws and Should be Dismissed ..............................................................................................35

(i)  Plaintiffs Fail to Properly Plead a Predicate Act ...........................................................35

(a) Plaintiffs Fail to Satisfy the Specificity
Requirement of Rule 9(b) ........................................................................35

(b) Plaintiffs Fail To Identify The Purpose Of The Mailing ..........................38

(c) Plaintiffs Fail to Allege Facts Giving Rise To a Strong Inference
of Fraudulent Intent ...............................................................................39

(ii) Failure to Allege Pattern of Racketeering Activity .........................................41

(iii) Plaintiffs Fail To Allege An Individual Defendant Distinct
From the "Enterprise"...................................................................................42

B.  Even if Plaintiffs Had Adequately Pleaded a RICO Claim, They Lack
Standing to Pursue a RICO Claim ........................................................................43

C.  Plaintiffs' RICO Claim Is Preempted by the FLSA..............................................45


POINT VI

TO THE EXTENT ANY OF PLAINTIFFS'
CLAIMS SURVIVE, THE COMPLAINT MUST
STILL BE DISMISSED BECAUSE PLAINTIFFS
LACK STANDING...................................................................................................46

Conclusion .................................................................................................................50

## Preliminary Statement

Defendant The New York and Presbyterian Hospital ("NYPH" or "Hospital"), by its attorneys, Epstein Becker & Green, P.C. and Willkie Farr & Gallagher, submits this Memorandum of Law in support of its motion to dismiss the Second Amended Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[1]

Plaintiffs Masahiro Nakahata and Diana Gardocki are registered nurses ("RNs") who were employed by NYPH pursuant to the terms of a Collective Bargaining Agreement ("CBA") between the Hospital and the New York State Nurses Association ("NYSNA").[2]  (Bart Minsky Aff., sworn to on November 12, 2010, ¶¶ 8, 9.) Their Complaint alleges a multi-count putative collective action and class action, the essence of which is that the two RNs (and the putative class members), were not paid for unspecified meal periods and breaks through which they allegedly worked and, as a result, were denied "applicable premium pay" and overtime.[3]

---

[1] The Second Amended Complaint dated October 22, 2010 is attached as Exhibit A to the Affidavit of Kenneth W. DiGia, sworn to on November 15, 2010 and hereafter referred to as "Compl., ¶ __".

[2] As chronicled in a website that Plaintiffs' counsel maintains, this action is part of a nationwide assault on the healthcare system by Plaintiffs' counsel, who has filed similar actions against healthcare systems in Buffalo, Pittsburgh, Syracuse, Boston, Philadelphia and elsewhere. *See* www.hospitalovertime.com which details the actions Plaintiffs' counsel has brought.  In addition, in March and April of this year counsel for Plaintiffs filed and (currently have pending) six other almost identical actions against various New York Metropolitan area healthcare systems in the Southern and Eastern Districts of New York.

[3] The Complaint purports to represent a diverse and unwieldy class of nursing and non-nursing employees consisting of all "hourly employees . . . such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, respiratory technicians, respiratory care specialists, respiratory care practitioners, clinical coordinators, medical assistants, home care nurses, home health aides, clinical case managers, midwives and other health care workers." (Compl., ¶ 83.)

The Complaint alleges that had these hours been counted as "hours worked," they (and the putative class members), would have received pay at a rate higher than their base salary.

The Complaint asserts 12 claims: (1) violation of the Fair Labor Standards Act ("FLSA"); (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) violation of the New York Labor Law ("NYLL"); (4) breach of "implied oral" [sic] contract; (5) breach of express oral contract; (6) breach of implied covenant of good faith and fair dealing; (7) quantum meruit; (8) unjust enrichment/restitution; (9) fraud; (10) negligent misrepresentation; (11) conversion; and (12) estoppel with respect to statute of limitations defenses.

Despite an illusion of substance created by a 45 page, 227-paragraph Complaint, Plaintiffs present no more than a formulaic and conclusory recitation of the elements of claims, in disregard of the pleading requirements set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).[4]   The Complaint should be dismissed because (1) it fails to set forth any facts to support an FLSA claim, including the basic element of even an approximation of the number of hours Plaintiffs supposedly worked without compensation; (2) the NYLL claim is not sufficiently pleaded; (3) Plaintiffs' FLSA, NYLL and common law claims are barred by section 301 of the Labor Management Relations Act ("LMRA") because Plaintiffs' terms of employment, including the hours, rates of pay, lunch and break times at the heart of this dispute, are governed by collective bargaining agreements; (4) Plaintiffs have failed to exhaust their remedies or otherwise seek redress for their grievances through the applicable mandatory collective bargaining agreement grievance and arbitration

---

[4] NYPH joins in all applicable legal arguments made by the New York-Presbyterian Healthcare System, Inc., Herbert Pardes and Wayne Osten in their motion to dismiss.

procedures; (5) Plaintiffs' common law claims are preempted by the FLSA and are inadequately pleaded or insufficient; and (6) Plaintiffs fail to state a claim under RICO and such a claim is preempted by the FLSA.   Finally, Plaintiffs lack standing to pursue their claims on their own behalf or on behalf of any other member of the putative collective or class action.

### The Allegations[5]

NYPH is a New York not-for-profit corporation that provides acute healthcare services. (Minsky Aff., ¶ 2.) NYPH is licensed pursuant to Article 28 of the New York Public Health Law as an acute care hospital and is exempt from taxation pursuant to the Internal Revenue Code. (*Id.*, ¶ 3.) Certain NYPH employees are represented by five different unions: 1199 Service Employees International Union ("SEIU"), NYSNA, Professional Dietitians of New York at Presbyterian Hospital, New York Chapter American Physical Therapy Association, Inc. and The Presbyterian Hospital Occupational Therapy Association, Inc. (*Id.*, ¶ 4.)

Plaintiffs are RNs who were employed by NYPH as professional salaried registered nurses pursuant to the terms of the NYSNA CBA.   (*Id.*, ¶¶ 8, 9 & Ex. A, §§ 1, 6, Schedule A.) Nakahata was hired on July 10, 2000 and worked until he began a leave of absence on June 5, 2007. (*Id.*, ¶ 8.) Nakahata has not worked at the Hospital at any time since June 5, 2007 and remains on a leave of absence. (*Id.*) Gardocki was hired as an RN on September 28, 1981 and worked at the Hospital until her employment terminated effective January 4, 2010 when she retired. (*Id.*, ¶ 9.)

---

[5] This Court's attention is respectfully called to the fact that the Complaint in this action is virtually identical, but for the parties' names, to the half-dozen other pleadings filed by Plaintiffs' counsel in the New York Metropolitan area. The mass-produced nature of these pleadings, none of which provides any of the requisite detail as to the defendant hospitals' failure to pay wages, demonstrates that the Complaint simply alleges legal conclusions without regard to the facts.

The Hospital has a long-standing collective bargaining relationship with NYSNA, of which Plaintiffs were members. (*Id.*, ¶¶ 5, 8, 9.) The CBA sets forth the comprehenve terms and conditions of Plaintiffs' employment with NYPH, including their salaries, entitlement to lunch time and breaks, and grievance procedures.[6] (*Id.*, Ex. A.) Certain of the Hospital's service, maintenance, clerical and pharmacy employees are represented by 1199 SEIU and their terms and conditions employment are set forth in the CBA between the League of Voluntary Hospitals, of which NYPH is a member, and 1199 SEIU. (*Id.*, ¶ 6.)

<u>**Argument**</u>

**POINT I**

**THE COMPLAINT FAILS TO STATE A
CLAIM UNDER THE FLSA OR THE NYLL**

**A.    Plaintiffs' FLSA Claims Are Not Sufficiently Pleaded**

The minimal pleading standards established by the Supreme Court are applicable in FLSA cases, including putative collective actions. To plead a valid claim under the FLSA, a complaint must at a minimum set forth, among other things, the approximate number of unpaid hours allegedly worked by Plaintiffs. *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007). " '[S]imply stating that [a plaintiff] w[as] not paid for overtime work' " does

---

[6] The current NYSNA CBA term is January 1, 2008 through January 1, 2011. (Minsky Aff., ¶ 5 & Ex. A.) The prior CBAs between NYSNA and NYPH covered January 1, 2002 to December 31, 2004 (*id.*, Ex. C) and January 1, 2005 to December 31, 2007. (*Id.*, Ex. B).

Defendants' submission of the CBAs governing the two named Plaintiffs' employment does not convert this motion to dismiss into a motion for summary judgment. *See, e.g., DiFolco v. MSNBC Cable L.L.C.*, __ F.3d ___, 2010 WL 3911330, at *6 (2d Cir. Oct. 7, 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may neverless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.") (internal citations omitted); *Holmes v. Air Line Pilots Ass'n, Int'l*, ___ F. Supp. 2d ___, 2010 WL 4025594, at **18-19 (E.D.N.Y. Oct. 12, 2010) (court could consider collective bargaining agreement when deciding 12(b)(6) motion to dismiss claims for breach of contract where the implied contract referenced by Plaintiffs was clearly a collective bargaining agreement).

not suffice. *Id.* at 630 (citation omitted). Rather, "where the plaintiff alleges violations of the FLSA's minimum and overtime wage provisions, the complaint should, at least approximately, allege the hours worked for which these wages were not received." *Id.* at 628; *accord Jones v. Casey's Gen. Stores*, 538 F. Supp. 2d 1094, 1102 (S.D. Iowa 2008) (holding that the following allegations are too conclusory to satisfy the *Twombly* pleading standard: " 'Plaintiffs and other assistant managers regularly worked regular time and overtime each week but were not paid regular and overtime wages in violation of the FLSA' " and " 'Defendant . . . regularly and repeatedly fail[ed] to compensate Plaintiffs and similarly situated individuals for all hours actually worked' " and " 'Defendant . . . fail[ed] to keep accurate time records to avoid paying them overtime wages and other benefits' "). In *Zhong*, the court dismissed the overtime claim pursuant to Fed. R. Civ. P. 12(b)(6) because the complaint did not specify the approximate number of hours worked for which overtime wages were not received. *Id.* at 630.

Similar to *Zhong*, the Complaint in this action alleges, in wholly conclusory fashion, that Defendants maintained policies or practices which resulted in employees performing work for which they were not compensated. The Complaint alleges that Defendants: (a) automatically deducted time from an employee's pay pursuant to a "Meal and Break Deduction Policy" during which they nonetheless were working[7] (Compl., ¶¶ 66-86); (b) did not compensate employees for "Preliminary and Postliminary" work (*id.*, ¶¶ 87-90); and (c) did not compensate employees for attending compensable training sessions (*id.*, ¶¶ 91-94), all resulting

---

[7] The U.S. Department of Labor has established that a policy of automatic meal deductions does not *per se* violate the FLSA. U.S. Dep't of Labor Fact Sheet #53-the Health Care Industry and Hours Worked; *see also Ledbetter v. Pruitt Corp.*, Civ. Action No. 5:05-CV-329, 2007 WL 496451, at *4 (M.D. Ga. Feb. 12, 2007); *Enright v. CGH Med. Ctr.*, No. 96 C 50224, 1999 WL 24683, at *6 (N.D. Ill. Jan. 12, 1999).

in their allegedly not getting paid for such work and/or not getting paid at the "applicable premium pay rates." (*Id.*, ¶¶ 10, 63, 65, 84, 85, 88, 89, 92, 93.)

None of these allegations states anything about specific payments allegedly due under the FLSA, and throughout the entirety of the Complaint, Plaintiffs never allege anything more than "Plaintiffs and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all of these hours." (*See, e.g., Id.*, ¶ 146.)   Moreover, the Complaint fails to set forth any factual allegations regarding the unpaid hours Plaintiffs (let alone putative collective action members) allegedly worked.  There are, for example, no details about work that Plaintiffs personally performed for which they were not compensated; when or where this occurred; how often; the circumstances under which it occurred or the amount of overtime, if any, allegedly worked.  The Complaint does not refer to the CBA, Plaintiffs' professional status or salary.   The inadequacy of the Complaint's allegations is highlighted by the fact that Plaintiff Nakahata is time-barred from asserting FLSA claims under the two year FLSA statute of limitations.  To the extent that Nakahata claims that the three year "willful" statute of limitation applies, he can potentially recover only for a very short period of time given that (i) he has been on leave of absence continuously since June 5, 2007; (ii) this action was filed on March 24, 2010; and (iii) his Consent to Become a Party Plaintiff was filed March 30, 2010.  *See* Docket Entry Nos 1, 3; 29 U.S.C. § 255(a).

The Complaint's mind-numbing allegations are insufficient to state an FLSA claim and are evidently designed, among other things, to camouflage this deficiency. *See, e.g., Anderson v. Blockbuster, Inc.*, No. 210 CV 00158MCEG6H, 2010 WL 1797249, at *4 (E.D. Cal. May 10, 2010) (district court dismissed an FLSA complaint and court concluded that to state a claim, a complaint " 'should allege more specific facts about Plaintiff himself, if not about the

entire class.' ") (citation omitted); *Villegas v. J.P. Morgan Chase & Co.*, No. C 09-00261, 2009 WL 605833, at *5 (N.D. Cal. Mar. 9, 2009) (dismissing FLSA overtime claim that merely "recit[ed] that [plaintiff] did not receive properly computed overtime wages. . . . This allegation does not state an overtime wage claim because it is not much more informative than an allegation that she was not paid for overtime work in general"); *Acosta v. Yale Club of N.Y.C.*, No. 94 Civ. 0888, 1995 WL 600873, at *4 (S.D.N.Y. Oct. 12, 1995) (dismissing FLSA action for overtime violations where the plaintiffs did not provide examples of workweeks in which they allegedly worked more than 40 hours); *Morrison v. Morgan Stanley Prop.*, No. 06-80751-civ, 2008 WL 1771871, at *4 (S.D. Fla. Apr. 15, 2008) (dismissing FLSA claim on motion to dismiss for failure to state a claim where plaintiff did not allege that she did not receive compensation for work performed); *D.C. Blues v. City of Hurst*, Civ. Action No. 4:06-cv-218-Y, 2007 WL 2325201, at *4-5 (N.D. Tex. 2007) (dismissing FLSA overtime claim where the plaintiff merely alleged that he was "denied overtime" and did not state how many hours he worked on particular days and how many hours beyond 40 he worked for a particular week); *Pruell v. Caritas Christi*, Civ. Action No. 09-11466-GAO, 2010 WL 3789318, at **1-4 (D. Mass. Sept. 27, 2010) (claims for minimum wage and overtime violations under the FLSA dismissed because "plaintiffs failed to allege facts, namely their approximate weekly wages and hours worked, that would nudge their minimum wage claim over the line from speculative to plausible" and " '[s]imply stating that a plaintiff was not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA' ") (*quoting Zhong*, 498 F. Supp. 2d at 630). The Complaint does not even attempt to plead such detailed, essential allegations for a violation of the FLSA, and that claim should be dismissed.

**B.**     **Plaintiffs' NYLL Claims Are Not Sufficiently Pleaded**

Although Plaintiffs allege claims for violation of the New York Labor Law, it is
not at all evident what, if any, portion of the NYLL Plaintiffs believe NYPH violated.  The only
two sections Plaintiffs cite are "N.Y. Lab. Law § 190(8)" and "N.Y. Lab. Law § 191 *et seq.*"
(Compl., ¶ 201.)  These sections, however, are entirely unrelated to the allegations in Plaintiffs'
Complaint regarding failure to pay Plaintiffs and Class Members for all hours worked.

Neither NYLL section "191 *et seq.*" nor section 190(8) contain a requirement that
an employer pay overtime.  Rather, Section 190(8) merely defines the term "week" for purposes
of section 191.  Section 191 in turn addresses the frequency with which employees are to be
paid, but creates no obligation with respect to wages over which the parties dispute the
employee's entitlement.    Rather, it simply provides in relevant part that "clerical and other
worker[s] shall be paid the wages earned in accordance with *the agreed terms of employment,* but
not less frequently than semi-monthly, on regular pay days designated in advance by the
employer." N.Y. Lab. Law § 191(d)(1) (emphasis added).  Plaintiffs are not disputing *when* they
were paid, but *how much* they were, or were not paid.  Thus, Plaintiffs' allegation that the NYLL
was violated because "Defendants failed to pay *all* wages due to Plaintiffs and Class Members
on regular days designated in advance pursuant to New York Labor Law" fails.  (Compl., ¶ 192
emphasis added.)  *See, e.g., Myers v. Hertz Corp.,* __ F.3d ___, 2010 WL 4227452, at *5 & n.1
(2d Cir. Oct. 27, 2010) ("Labor Law § 191 by its terms only involves the timeliness of wage
payments and does not appear to afford to plaintiffs any substantive entitlement to a *particular*
wage.") (*citing* NYLL § 191(1)(d)); *Wysocki v. Kel-Tech Constr. Inc.,* Index No. 603591/03,
2005 WL 6239342 (Sup. Ct. N.Y. County Apr. 8, 2005) (section 191 claim "dismissed because

the dispute here is over the amount to be paid, and not whether it was paid periodically as required by Labor Law § 191").

**POINT II**

**THE ALLEGED FLSA, NYLL AND COMMON LAW
CLAIMS REST ON AN INTERPRETATION OF
COLLECTIVE BARGAINING AGREEMENTS AND THUS
ARE BARRED BY SECTION 301 OF THE LABOR
MANAGEMENT RELATIONS ACT**

The LMRA is one of the few areas of federal law where Congress intended to create "unusual pre-emptive power." *Livadas v. Bradshaw*, 512 U.S. 107, 122 n.16 (1994). The scope of Section 301 is broad, as it "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). To effectuate this policy of sound labor relations, "Section 301 [preempts state-law] claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.' " *Id.* at 410 n.10 (*quoting Int'l Bhd. of Elec. Workers, AFL-CIO v. Hechler,* 481 U.S. 851, 859 n.3 (1987)). Thus, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp v. Lueck*, 471 U.S. 202, 220 (1985). This rule has been applied not only to bar claims brought under common law tort and contract, but also claims under the FLSA and NYLL. *See id.* at 211-12; *Sheehan v. U. S. Postal Serv.*, 6 F. Supp. 2d 141, 147-48 (N.D.N.Y. 1997) (New York common law claims preempted by Section 301); *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003) (NYLL claims preempted by Section 301).

Here, the Complaint alleges violations of NYLL §§ 190(8) and "191 *et seq.*", the FLSA and various common law claims due to the alleged: (a) automatically deducting time from an employee's pay pursuant to a "Meal and Break Deduction Policy," (Compl., ¶¶ 66-86); (b) failing to compensate employees for "Preliminary and Postliminary" work (*id.*, ¶¶ 87-90); and (c) failing to compensate employees for attending compensable training sessions (*id.*, ¶¶ 91-94), all resulting in their allegedly not getting paid "for all time they worked" and/or not being paid for such work at the "applicable premium pay rates." (*Id.*, ¶¶ 10, 65. *See also Id.*, ¶¶ 63, 84, 85, 88, 89, 92, 93.) Any determination that Plaintiffs were not compensated for this time, however, necessarily depends on an interpretation of the CBAs between the Hospital and NYSNA. As such, the NYLL, FLSA and related common law claims alleged in the Complaint are barred by Section 301 of the LMRA.

**A.      The CBA Relates Directly to Plaintiffs' Claims**

The CBA contains a variety of interrelated provisions applicable to the claims here. There is no question that adjudication of claims alleged in the Complaint will require this Court to interpret - - and determine the intent of the parties in agreeing to - - provisions related to, *inter alia,* the calculation of hours worked and overtime, meal periods and training.[8]

**(i)      The CBA Provides that Nurses Are Salaried Employees**

The NYSNA CBA establishes the base salary for nurses and then adds differentials to the base salary to determine each RN's salary. (Minsky Aff., Ex. A, § 6,

---

[8] Furthermore, this Court could be required to interpret applicable provisions contained in at least five different collective bargaining agreements for the time period of March 2004 to the present. (Minsky Aff., ¶ 7.) These five different collective bargaining agreements are between the Hospital and (1) NYSNA (2) 1199 SEIU and League of Voluntary Hospitals and Homes of New York, (3) Professional Dietitians for New York at Presbyterian Hospital, (4) New York Chapter American Physical Therapy Association, Inc., and (5) Presbyterian Hospital Occupational Therapists Association, Inc.. (*Id.*, ¶¶ 4, 6.)

Schedule A.) The specifics are set forth in Article 6 of the CBA and its Schedule A. All nurses

in the bargaining unit, including Plaintiffs, have the same terms and conditions of employment.

(*Id.*, Ex. A.) The base rate salaries are paid for the "normal workday" and "normal workweek,"

as those terms are defined in the CBA, as follows:

### 5.01   Normal Workday

For the purposes of determining application of an employee's
regular compensation rate, the employee's normal workday will be
seven and one-half (7½) consecutive work hours, excluding any
scheduled meal period.

### 5.02   Normal Workweek

For the purposes of determining application of an employee's
regular compensation rate, the employee's normal work schedule
will be seventy-five (75) hours in fourteen (14) days in a biweekly
period, and the employee will have four (4) days off in each
biweekly period. The workweek will begin at 12:01 a.m. Sunday
and end at 12:00 midnight Saturday.

(*Id.*) The CBA also provides that RNs are entitled to receive non-statutory overtime above the

CBA salary schedule for work in excess of the normal workday or the normal workweek.

### 6.01 Base Compensation Rate

An employee's base compensation rate (job rate) is an employee's
salary exclusive of all differentials. The base compensation rates
to be effective during the term of this Agreement are set forth in
Schedule A of this Agreement.

### 6.02 Regular Compensation Rate

An employee's regular compensation rate . . . will include any shift
differential, experience differential, educational differential or
certification differential to which the employee is entitled pursuant
to paragraphs 10.03, 10.04, 10.05 and 10.13 of this Agreement.

### 6.03 Premium Compensation Rate: Overtime Work

All hours of paid time (excluding on-call time) in excess of
seventy-five (75) hours in a fourteen (14) day pay period or in

> excess of seven and one-half (7 ½) hours in a single workday, shall be paid for at the rate of time and one-half (1½) the individual employee's annual regular compensation rate divided by 1950 in the case of full-time employees.

* * *

> **6.05 Pay**
>
> The payroll period is biweekly. Regular paychecks will normally be distributed bi-weekly on Thursday. Paycheck errors will be corrected as set forth in Appendix D Paycheck Error Correction Procedure.[9]

(*Id.*) The CBA defines the seven different types of "applicable premium pay," other than overtime pay: shift differential (Section 10.03); experience differential (Section 10.04); educational differential (Section 10.05); differential for work in a higher title (Section 10.06A); charge pay (Section 10.06B); preceptor pay (Section 10.06C); and certification differential (Section 10.13), many of which are included in the RN's total compensation salary (Section 6:02). (*Id.*) Finally, to the extent an employee believes there was an error in his or her paycheck, Appendix D contains Paycheck Correction Error Procedures. (*Id.*)

### (ii)   Rest and Meal Periods

The CBA also establishes the rules that apply to the rest and meal breaks that the Complaint alleges were not paid. Article 7, entitled Monetary Benefits: Compensation for Time Not Worked, provides:

> [a]n employee working a full shift shall be entitled to two (2) rest periods of fifteen (15) minutes each in each working day, or a one-half (1/2) hour break. This time cannot be taken at the end of a shift. An employee who works at least a full half (1/2) workday shall be entitled to one (1) such fifteen (15) minute rest period.

(*Id.*, § 7.16)

---

[9] The Hospital and NYSNA have also negotiated for flexible alternate work schedules which are permitted for salaried professional employees. (*See* Minsky Aff., Ex. A., Appendix A.)

Section 8.01, entitled Unpaid Leave, provides for Meal Periods:

[a]ll employees will be entitled to a one (1) hour meal period. The
meal period will not be considered time worked.

(*Id.*)

Appendix A sets forth the employment terms regarding meal breaks for employees on Alternative Work Schedules. (*Id.*, Appendix A.) It provides that "[i]f the employee must work through a meal period, the employee will be re-scheduled later, within that shift." (*Id.*)

## B.    The NYLL Claims Are Preempted

The Complaint's allegations that "defendants willfully violated the [NYLL] and Plaintiffs and Class Members have suffered damages pursuant to N.Y. Lab. Law § 190(8) and N.Y. Lab. Law § 191 *et seq.*" (Compl., ¶ 201) cannot be resolved without reference to the CBA. *Salamea v. Macy's East, Inc.*, 426 F. Supp. 2d 149, 155 (S.D.N.Y. 2006). This is evident because the Court cannot determine what wages Plaintiffs earned and whether they were properly paid under the NYLL - - that is, whether Plaintiffs were "paid the wages earned in accordance *with the agreed terms of employment*"-- without referring to and interpreting the CBA. N.Y. Lab. Law § 191(d)(1) (emphasis added). In similar situations, courts have held that NYLL claims against employers for unpaid wages are preempted by LMRA section 301. *Heyer v. Morris Okun, Inc.*, No. 03 Civ. 2218, 2003 WL 21991583 (S.D.N.Y. Aug. 20, 2003); *Garcia v. Allied Parking Sys.*, 300 A.D.2d 219, 219 (1st Dep't 2002); *Ellis v. Harpercollins Publishers, Inc.*, No. 99 Civ. 12123, 2000 WL 802900, at *2 (S.D.N.Y. June 21, 2000). *See also Cavallaro v. UMass. Mem. Health Care, Inc.*, No. 09-40181-FDS, slip op. document no. 33 (D. Mass. July 2, 2010) (claim under Massachusetts Weekly Wage Act preempted in an action substantially identical to this one; *see* DiGia Affidavit Exhibit B for a copy of the decision); *Pruell v. Caritas*

*Christi*, Civ. Action No. 09-11722-GAO, 2010 WL 3789283, at *3 (D. Mass. Sept. 27, 2010)

("[b]ecause multiple CBA provisions must be consulted and applied to establish the plaintiffs'

wage rates, and because consulting and applying multiple provisions amounts to 'interpretation'

of the CBAs, section 301 preempts the plaintiffs' [Massachusetts] statutory wage claims").

**C.      The FLSA Claims Are Barred by Plaintiffs' Failure to use the
         Mandatory Grievance and Arbitration Procedure of the CBA**

Since the adjudication of the FLSA claims alleged in the Complaint will require

interpretation of the collective bargaining agreement covering the Plaintiffs (as well as other

CBAs involving any contemplated organized class or subclass of employees), the mandatory

grievance and arbitration procedure set forth in the CBAs must be exhausted before the

commencement of an FLSA action.

In *Vadino v. A. Valey Eng'rs,* 903 F.2d 253, 266 (3d Cir. 1990), the Third Circuit

held that FLSA "claims which rest on interpretations of the underlying collective bargaining

agreement must be resolved pursuant to the procedures contemplated under the LMRA,

specifically grievance, arbitration, and, when permissible, suit in federal court under Section 301

[of the LMRA] … an employee cannot circumvent the necessity of complying with the LMRA

procedure to get a determination of his or her right to the wages claimed." *See also Townsend v.*

*BC Natural Chicken LLC,* Civ. Action No. 06-4317, 2007 WL 442386, at *4 (E.D. Pa. 2007)

(granting motion to dismiss plaintiffs' FLSA collective action claim seeking compensation for all

time worked, including "donning and doffing," because "any decision this Court or any finder of

fact may take regarding Plaintiffs' claims under § 7(a) of the FLSA requires the Court to also

interpret the CBA, and the intent of the parties thereto in formulating Art. XX Sec. 12" of the

agreement, which provided " 'twelve (12) minutes pay per week to provide wash up time' ");

*Bester v. Chicago Transit Auth.*, No. 86 C 1067, 1991 WL 249732 (N.D. Ill. Nov. 15, 1991)

(dismissing FLSA claim for unpaid training time as the claim rested on an interpretation of the

underlying CBA); *Martin v. Lake County Sewer Co.*, 269 F.3d 673, 679 (6th Cir. 2001) (FLSA

claims under labor agreements are precluded by Section 301 of the LMRA.)

   Because Plaintiffs have not commenced any grievance proceedings pursuant to

the CBA, this action cannot proceed.

**D.**  **The Common Law Claims Are Preempted**

  **(i)**  **Breach of Implied and/or Express Oral Contract and Implied**
     **Covenant of Good Faith and Fair Dealing (Claims IV-VI)**

   The Complaint's vague and conclusory allegations that NYPH breached an

implied or express oral contract and the implied covenant of good faith and fair dealing to pay

Plaintiffs for (a) meal breaks; (b) pre-shift and post shift hours and (c) time spent at training

programs, are preempted. (Compl., ¶¶ 66-94.)  The same is true for the Complaint's conclusory

allegations that (a) "defendants contracted to hire Plaintiffs and Class Members at a set rate of

pay, with a set work schedule for a particular position, and under set terms of employment"

(*id.*, ¶ 152); (b) that Defendants breached these contracts by "failing to compensate Plaintiffs and

Class Members for time that they worked," including "work that should have been calculated at

applicable premium pay rates" (*id.*, ¶¶ 89, 153); and (c) that "[b]oth unwritten contracts and any

written contracts between Plaintiffs and Class Members and defendants contained an implied

covenant of good faith and fair dealing, which obligated defendants to perform the terms and

conditions of the employment contract fairly and in good faith and to refrain from doing any act

that would deprive Plaintiffs and Class Members of the benefits of the contract."  (*Id.*, ¶ 156.)

Resolving the alleged contract claims based on these allegations depends on the CBA for two reasons.

First, the CBA contains an integration clause which the Court must interpret to determine whether alleged contract claims are viable.

> This Agreement shall constitute the sole and entire agreement between the parties with respect to rates of pay, wages, hours and all other conditions of employment. It may not be amended, modified, waived, extended or otherwise revised except by agreement in writing duly executed by the parties.

(Minsky Aff., Ex. A, § 17.) Moreover, the Complaint's allegations that NYPH made individual promises upon hire to each Plaintiff and to each Class Member who is a union member are implausible and barred by the CBA. (Compl., ¶ 140)

Where a plaintiff covered by a collective bargaining agreement alleges a breach of contract outside of the collective bargaining agreement, "[a] court could not evaluate the validity of these claims without determining whether the collective-bargaining agreement was intended to be the sole agreement between the parties" and whether the integration clause precludes collateral agreements with Plaintiffs (and other purported Class Members who are or were union members). *Ziobro v. Conn. Inst. for the Blind*, 818 F. Supp. 497, 501-02 (D. Conn. 1993). The alleged contract claims therefore depend on the CBA and are preempted. *See, e.g., Cavallaro*, No. 09-40181-FDS, slip op. document no. 33 (contract claims preempted by LMRA § 301 because they would require an examination of the integration clauses to decide whether the CBAs were intended to be the sole agreement between the parties).

Second, the Court cannot analyze the alleged state law contract claims without reviewing and interpreting the CBA provisions. The Complaint's allegations that NYPH failed to pay for time worked during their meal periods, before and after their shifts and during training

programs cannot be resolved without interpreting the CBA provisions, which govern those terms of employment. As such, these claims are preempted. *See Pruell*, 2010 WL 3789283, at \*\*3-4; *DiGiantommaso v. Globe Newspaper Co.*, 632 F. Supp. 2d 85 (D. Mass. 2009) (dismissing implied breach of contract claims on grounds of LMRA preemption because such claims require the court to review the totality of the parties' relationship, which would involve examination of the past practices and bargaining history of the parties, and thus, inevitably, interpretation of the CBA); *Chaney v. Greyhound Lines, Inc.*, No. 09 CV 7593, 2010 WL 2541369, at \*3 (S.D.N.Y. June 23, 2010) ("the LMRA preempts any potential common law breach of contract claim that could be liberally construed from Plaintiff's complaint"); *Ziobro*, 818 F. Supp. at 501-02 (finding claims for breach of implied contract and promissory estoppel preempted by § 301).

### (ii)  Quantum Meruit and Unjust Enrichment/Restitution (Claims VII and VIII)

The alleged unjust enrichment and quantum meruit claims are duplicative of the statutory claims and are also preempted. *O'Rourke v. Carmen M. Pariso, Inc.*, 501 F. Supp. 2d 445, 450 (W.D.N.Y. 2007) (breach of contract and quantum meruit claims preempted by Section 301 of the LMRA); *McCarty v. Reynolds Metals Co.*, 883 F. Supp. 356, 361 (S.D. Ind. 1995) (unjust enrichment claim preempted by Section 301).

"The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *See Paramount Film Distrib. Corp. v State of New York*, 30 N.Y.2d 415, 421 (1972) (citations omitted). There can be no unjust enrichment where there is a valid and enforceable written contract, such as the CBA. *Frydman v. Credit Suisse First Boston Corp.*, 272 A.D.2d 236 (1st Dep't 2000). As to quantum meruit, the elements of a claim based on the theory of quantum meruit are: (1) the performance of services in good faith; (2) the acceptance of the

services by the party for whom they were rendered; (3) the expectation of compensation for those services; and (4) a statement of the reasonable value of the services. *Pulver Roofing Co. v. SBLM Architects, P.C.*, 65 A.D.3d 826 (4th Dep't 2009). It is also well settled that a party may not recover in unjust enrichment where the parties have entered into a contract that governs the subject matter. *Cox v NAP Constr. Co.*, 10 N.Y.3d 592, 607 (2008).

NYPH has employed and paid the named Plaintiffs pursuant to the terms of the CBA. Thus, it cannot be said that good conscience requires NYPH to provide any additional compensation to them. The Court will be required to analyze the facts in light of the CBA in order to determine whether Plaintiffs have been paid for all hours and received all applicable premium pay for those hours and whether they are entitled to additional compensation in "equity and good conscience." Therefore, these claims are preempted. *See, e.g., Pruell*, 2010 WL 3789283, at **3-4.

(iii)   **Fraud and Negligent Misrepresentation (Claims IX and X)**

The alleged fraud and negligent misrepresentation claims are also preempted as they require the Court to interpret the CBA. While the Complaint alleges that Defendants "deliberately concealed from [their] employees that they did not receive compensation for all the work they performed and misled them into believing they were being paid properly," there are no specific factual allegations. (Compl., ¶ 171.)[10]

---

[10] To plead a viable claim for fraud, a plaintiff must show (1) that there was a material misrepresentation of a fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP,* 12 N.Y.3d 553, 559 (2009). To plead a viable negligent misrepresentation claim, a plaintiff must allege (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. *J.A.O. Acquisition Corp. v. Stavitsky,* 8 N.Y.3d 144 (2007). For both fraud and negligent misrepresentation, a plaintiff must show not only that the party actually relied on the misrepresentation, but also that such reliance was reasonable. *McMorrow v. Dime Sav. Bank of Williamsburgh,* 48 A.D.3d 646 (2d Dep't 2008). Significantly, a party cannot satisfy the reasonable reliance prong if the alleged

Even assuming, *arguendo*, that a state law claim has been viably pleaded, it is nevertheless preempted by the LMRA because the Court would have to review the CBA to determine whether Defendants believed their alleged statements were false and whether any of the CBA provisions present a meaningful conflict with alleged oral misrepresentations. The CBA clearly addresses the meal break (Section 8.01; Appendix A, Section VI(1); Appendix B, Section 17), compensable time (Section 5.01, Section 5.02) and payment of overtime (Section 6.03). The CBA further provides the manner in which Plaintiffs are paid overtime and other premium time. (Section 6.04, Section 10.03, Section 10.04, Section 10.05, Section 10.06A, Section 10.06B, Section 10.06C, Section 10.10, Section 10.13.) These CBA provisions are directly relevant to whether the Hospital knowingly made any false statements regarding the alleged pay policies. Since the Court cannot analyze the fraud and negligent misrepresentation claims alleged in the Complaint without reference to the CBA, the claims are preempted. *See, e.g., Pruell*, 2010 WL 3789283, at **3-4; *Cavallaro*, No. 09-40181-FDS, slip op. document no. 33 (claims for fraud and negligent misrepresentation preempted by § 301); *Hart v. Verizon Commc'n, Inc.*, No. Civ. A. 03-11811-RWZ, 2004 WL 438786, at *2 (D. Mass. Mar. 9, 2004) (state law claims for fraud and negligent misrepresentation which require interpretation of the CBA are preempted by Section 301 of the LMRA); *George v. AT&T Corp.*, No. Civ. A. 05-11079, 2006 WL 1766498, at *8 (D. Mass. June 23, 2006) (same).

---

oral misrepresentation conflicts in a meaningful manner with the terms of a written contract. *Old Clinton Corp. v. 502 Old Country Road, LLC*, 5 A.D.3d 363, 364-65 (2d Dep't 2004); *Bango v. Naughton*, 184 A.D.2d 961 (3d Dep't 1992).

#### (iv)    Conversion (Claim XI)

The alleged conversion claim is preempted because it, like the fraud and negligent misrepresentation claims, requires analysis of the CBA to determine an alleged wrongful intent.[11]

Again, since the Complaint alleges that Defendants' "failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes the conversion of the monies of Plaintiffs and the Class Members" (Compl., ¶ 188), the Court will have to review the applicable provisions of the CBA to determine whether these actions were wrongful. *McCormick v. AT&T Techs, Inc.*, 934 F.2d 531, 535-537 (4th Cir. 1991) ("Management simply could not have acted negligently or wrongfully if it acted in a manner contemplated by the collective bargaining agreement. Thus, just as the necessity of construing the collective bargaining agreement dictates that the intentional infliction tort claim be preempted, so too it dictates that the . . . [conversion claims] likewise be preempted"); *Pruell*, 2010 WL 3789283, at **3-4; *Shales v. Asphalt Maint., Inc.*, No. 03 C 8250, 2004 WL 2191609, at *5 (N.D. Ill. Sept. 28, 2004) ("Plaintiffs' conversion claim alleges that Johnson had a duty to properly withhold, remit, and report wages and make payments to the Funds, and that by not doing so, Johnson has converted those funds rightfully due the plaintiffs for his own personal benefit. . . . As a result, the state tort claim for conversion is inextricably intertwined with the terms of the CBA, and the claim is preempted by the LMRA."); *Deakins v. U. S. Postal Serv.*, 146 F. Supp. 2d 1290 (M.D. Fla. 2001) (state law claim for conversion required interpretation of CBA and was therefore preempted).

---

[11]   A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession. *State of New York v. Seventh Regiment Fund*, 98 N.Y.2d 249, 259-60 (2002).  Two key elements of conversion are (1) plaintiff's possessory right or interest in the property, and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.  *Id.* (citations omitted.)

**E.      The Claims Which are Barred by the LMRA Must be
         Dismissed for Failure to Exhaust Administrative Remedies**

Because all of the Plaintiffs' common law and statutory claims are barred by the

LMRA, Plaintiffs' sole remedy (if any) is provided by the CBA. Plaintiffs have, however, failed

to exhaust their administrative remedies prior to bringing any suit under Section 301 of the

LMRA. This requires dismissal of the action. *Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *Vera*,

335 F.3d at 118-119. Because Plaintiffs are required to exhaust their administrative remedies

under the CBA, the Complaint should be dismissed in its entirety. *Allis-Chalmers*, 471 U.S. at

220-221.

Plaintiffs have simply failed to use the applicable grievance and arbitration

procedure. Article 14.01 of the CBA is unequivocal in requiring that

> every grievance, either Association (and the employees it
> represents) or Employer may have with each other arising from the
> application or interpretation of this Agreement, or otherwise, will
> be adjusted as stated in paragraphs 14.02 through 14.06.

(Minsky Aff., Ex. A.) This grievance process has four steps, culminating in binding arbitration

pursuant to the Voluntary Labor Arbitration Rules of the American Arbitration Association. (*Id.*,

§§ 14.03-14.06.)

Since the Complaint fails to allege Plaintiffs exhausted their administrative

remedies (and they have not), their claims must be dismissed.[12] Minsky Aff., ¶ 10; *Vera*,

335 F.3d at 118-119.

---

[12] Dismissal on this ground can also be sought by motion pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g., Baumgart v. Stony Brook Children's Serv., P.C.*, 249 F. App'x 851, 852 (2d Cir. 2007) (affirming Fed. R. Civ. P. 12(b)(1) dismissal for lack of subject matter jurisdiction holding "a union employee must exhaust the grievance remedies provided in the collective bargaining agreement before bringing suit against the employer"); *Brown v. Local 701*, No. 97 C 5872, 1998 WL 417597, at *6 (N.D. Ill. July 20, 1998).

## POINT III

## PLAINTIFFS' ALLEGED COMMON LAW CLAIMS FAIL

### A.    Plaintiffs' Common Law Claims are Preempted by the FLSA

Even assuming, *arguendo*, that the common law claims alleged in the Complaint are not preempted by the LMRA, they are nevertheless preempted by the FLSA. *See Lopez v. Flight Servs. & Sys., Inc.*, No. 07-cv-6186, 2008 WL 203028, at *5 (W.D.N.Y. Jan. 23, 2008). As explained by the Second Circuit:

> Federal preemption can be express or implied, but in either case is primarily a question of Congressional intent. Preemption can generally occur in three ways: where Congress has expressly preempted state law, where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or where federal law conflicts with state law.

*Clearing House Ass'n, L.L.C. v. Cuomo*, 510 F.3d 105, 113 (2d Cir. 2007) (citations and internal quotation marks omitted), *aff'd in part, rev'd in part on other grounds*, 129 S. Ct. 2710 (2009). Here, the allegations of the Complaint run afoul of the third type of preemption, *e.g.,* where federal law conflicts with state law, because each of the alleged state common law claims derives from Defendants' alleged failure to pay for hours worked and at applicable premium pay rates:

- Breach of Implied Oral or Express Oral Contract (Counts IV and V): The Complaint alleges that Defendants "failed to pay for time that Plaintiffs and Class Members worked including, but not limited to, during their meal breaks, time that Plaintiffs and Class Members spent in required, job related training, and time that Plaintiffs and Class Members spent before and after their regular work hours performing work-related tasks." (Compl., ¶ 147.) This alleged breach of contract caused Plaintiffs to suffer "damages including all amounts they should have been paid for all time worked including applicable premium pay." (*Id.*, ¶ 155.)

- Breach of Implied Covenant of Good Faith and Fair Dealing (Count VI): The Complaint alleges that Defendants breached an implied covenant of good faith and fair dealing, which caused Plaintiffs to suffer "damages including all

amounts they should have been paid for all the time worked, including applicable premium pay." (*Id.*, ¶ 157.)

- <u>Quantum Meruit and Unjust Enrichment/Restitution (Counts VII and VIII)</u>: The Complaint alleges that Defendants have been unjustly enriched and "failed to act in good faith by failing to pay for all the time worked including applicable premium pay." (*Id.*, ¶ 167.)

- <u>Fraud and Negligent Misrepresentation (Counts IX and X)</u>: The Complaint alleges that Defendants had engaged in fraud and negligent misrepresentation through a "continuing practice and policy of failing to pay their employees for all time worked, including applicable premium pay." (*Id.*, ¶ 182.)

- <u>Conversion (Count XI)</u>: The Complaint alleges that Defendants' "failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay, constitutes . . . conversion." (*Id.*, ¶ 188.)

Since the basis for each of these common law claims is Defendants' alleged failure to compensate Plaintiffs and Class Members for all the time they worked, including applicable premium pay (Compl., ¶¶ 147, 153, 155, 157, 162, 167, 175-177, 185, 188, 189), they are identical to the FLSA claims in support of which Plaintiffs allege: "defendants maintained several illegal pay policies that denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates." (*Id.*, ¶ 65; *see also* ¶¶ 83-85, 88-89, 92-93.) Where a plaintiff alleges state law claims duplicative of an FLSA claim, courts routinely dismiss the claims as preempted. *See, e.g., Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007); *Roman v. Maeitta Constr., Inc.*, 147 F.3d 71, 76 (1st Cir. 1998); *Barrus v. Dick's Sporting Goods, Inc.*, ___F. Supp. 2d___, 2010 WL 3075730, at *4 (W.D.N.Y. Aug. 5, 2010) (plaintiffs' common law claims seeking unpaid overtime preempted by the FLSA) (citation omitted); *Lopez,* 2008 WL 203028, at *5; *Perez v. Jasper Trading, Inc.*, No. 05 CV 1725, 2007 WL 4441062, at *4 (E.D.N.Y. Dec. 17, 2007) (plaintiffs' state law negligence claims were "duplicative of and preempted by the FLSA" because they were "ultimately based on the same

factual premises as their FLSA claims ..."); *Petras v. Johnson*, No. 92 Civ. 8298, 1993 WL

228014, at *2 (S.D.N.Y. June 22, 1993).

**B.     Even if Plaintiffs' Common Law Claims are not Preempted,
         they are Insufficiently Pleaded and Should be Dismissed**

      **(i)     Plaintiffs Have Failed To State A Viable
                Claim For Breach of Contract**

      Plaintiffs bring two purported breach of contract claims: (1) breach of an implied

"oral" contract, and (2) breach of express oral contract. (Compl., ¶¶ 202-207.) Regardless of

how they are framed, Plaintiffs' claims should be dismissed.

      First, Plaintiffs' breach of contract claims fail for lack of consideration as the

alleged "contract" is nothing more than an alleged promise by Defendants to comply with the

law, and a pre-existing legal duty cannot form the basis of a contract because such a contract

lacks consideration.

      "Under New York law, a valid contract must be supported by consideration and

include mutual assent, legal capacity, and legal subject matter." *Jones-Soderman v. Mazawey*,

No. 09 Civ 3185 (SCR) (LMS), 2009 U.S. Dist. LEXIS 122361, at *11 (S.D.N.Y. Aug. 7, 2009)

(*citing Murray v. Northrop Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006)). A

plaintiff cannot recover under a contract theory for the alleged failure to comply with existing

statutes because "[a] promise to comply with a preexisting legal duty is not adequate

consideration upon which a valid contract may be based." *Fafoutis v. Lyons*, 149 A.D.2d 565,

566 (2d Dep't 1989) (citations omitted); *see also Northrop Grumman*, 444 F.3d at 178 ("A

promise to perform a pre-existing legal obligation does not amount to consideration.") (citation

omitted). Indeed, courts have specifically recognized that breach of contract claims cannot be

maintained due to lack of consideration when there is no independent obligation separate and

apart from the requirements imposed by the FLSA and state labor laws. *Krichman v. J. P. Morgan Chase & Co.*, No. 06 CV 15035, 2008 WL 5148769, at \*\*3-4 (S.D.N.Y. Dec. 8, 2008). In the present case, Plaintiffs fail to identify any specific consideration or obligations independent of the statutory requirements underlying their claims. (*See, e.g.,* Compl., ¶¶ 151, 153.) Thus, the "contracts" upon which Plaintiffs' breach of contract claims are based involve nothing more than an alleged promise to comply with a pre-existing legal duty. Plaintiffs' breach of contract claims should be dismissed due to a lack of consideration.

Second, even if Plaintiffs could establish that their contract was supported by some form of consideration, which it is not, Plaintiffs have failed to establish the existence of an enforceable contract. In New York, " 'an action for breach of contract requires proof of (1) a contract, (2) performance of the contract by one party, (3) breach by the other party, and (4) damages.' " *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (*citing Rexnord Holdings v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).

Here, Plaintiffs have failed to allege the existence of any contract entitling them to any alleged unpaid wages. Plaintiffs' vague allegations highlight the fact that they are unable to establish the existence of a contract. Indeed, Plaintiffs' Complaint alleges, only in the most broad and conclusory terms, that:

- "By entering into an employment relationship," the parties entered into a number of unidentified "oral express contracts" and "implied contracts." (Compl., ¶ 140);

- "Defendants entered into express oral contracts with Plaintiffs and Class Members that were explicitly intended to order and govern the employment relationship." (Compl., ¶ 141); and

- "Defendants also entered into implied contracts with Plaintiffs and Class Members as a result of their on-going dealings and course of conduct...." (Compl., ¶ 148).

Significantly, Plaintiffs' Complaint fails to include any allegations regarding the alleged statements, actions, or other conduct that would create an "oral express contract" or "implied contract." The conspicuous absence of such critical details renders these purported contracts too indefinite to be enforceable. *See Gutkowski v. Steinbrenner*, 680 F. Supp. 2d 602, 609 (S.D.N.Y. 2010) (" 'The doctrine of definiteness or certainty is well established in contract law. In short, it means that a court cannot enforce a contract unless it is able to determine what in fact the parties have agreed to . . . . [I]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.' " (*quoting 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991)). Plaintiffs' causes of action for breach of contract fail to state a claim for relief and should be dismissed.

### (ii)   Plaintiffs' Claim For Breach of Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed

Plaintiffs also purport to bring a cause of action for breach of implied covenant of good faith and fair dealing. (Compl., ¶¶ 208-210). This claim, however, should be dismissed.

First, Plaintiffs cannot maintain a claim for breach of implied covenant of good faith and fair dealing because they are employees-at-will and there is no such obligation in the employment-at-will context. *Barker v. Time Warner Cable, Inc.*, 24 Misc. 3d 1213(A), 2009 WL 1957740, at *6 (Sup. Ct. Nassau County 2009). "The basis for this rule is that an obligation to abide by an implied covenant of good faith and fair dealing would be inconsistent with the employer's unfettered right to terminate an at-will employee." *Nunez v. A-T Fin. Info., Inc.*, 957 F. Supp. 438, 443 (S.D.N.Y. 1997). Here, Plaintiffs do not allege or otherwise plead any facts to suggest that they are anything but employees-at-will and therefore cannot maintain a claim for breach of implied covenant of good faith and fair dealing.

Second, "New York law ... does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when [as here] a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life and Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002); *see also Alter v. Bogoricin*, No. 97 Civ. 0662 (MBM), 1997 WL 691332, at *7 (S.D.N.Y. Nov. 6, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative.") (citation omitted).   Indeed, it is black letter law that "the implied covenant of good faith and fair dealing does not afford [Plaintiffs] an independent ground of relief." *Nader v. ABC TV, Inc.*, 150 F. App'x 54, 57-58 (2d Cir. 2005) (*citing New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)).

Here, Plaintiffs allege that Defendants breached their duty of good faith and fair dealing by "failing to pay Plaintiffs and Class Members for all of the time Plaintiffs and Class Members worked and by failing to pay Plaintiffs and Class Members for all time worked including applicable premium pay." (Compl., ¶ 155. *See also* Compl., ¶¶ 156-157.)   This is precisely the same basis upon which Plaintiffs premise their claims for breach of contract. (*Cf.* Compl., ¶¶ 145, 147, 151, 153, 155) (asserting causes of action based on express oral contracts and implied contracts based on allegations that Defendants did not compensate Plaintiffs for "all hours worked" during their employment).   Accordingly, Plaintiffs' cause of action for breach of implied covenant of good faith and fair dealing must be dismissed.

### (iii)   Plaintiffs' Quasi-Contract Claims For Quantum Meruit and Unjust Enrichment/Restitution Should Be Dismissed

Under New York law, quantum meruit and unjust enrichment are not separate causes of action.   Courts must "analyze quantum meruit and unjust enrichment together as a

single quasi contract claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citations omitted). Here, Plaintiffs' quasi-contract claim for quantum meruit/unjust enrichment fails for three reasons.

First, assuming Plaintiffs have established a valid breach of contract claim, which they have not, their quantum meruit/unjust enrichment claim must be dismissed as a matter of law. The New York Court of Appeals has stated that if a plaintiff can maintain a breach of contract claim, their quasi-contractual claims are precluded. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388 (1987) (citations omitted); *see also Mid-Hudson Catskill*, 418 F.3d at 175 ("New York law does not permit recovery in quantum meruit … if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim.") (citations omitted).

Second, even if Plaintiffs could state a claim for quantum meruit and unjust enrichment, they cannot recover under a quasi-contract theory because the FLSA provides an adequate remedy for any unpaid compensation Plaintiffs would be entitled to receive. Indeed, the court in *Bongat v. Fairview Nursing Care Ctr., Inc.*, 341 F. Supp. 2d 181, 189 (E.D.N.Y. 2004) addressed circumstances nearly identical to the case at bar and concluded that plaintiffs could not maintain quasi-contract claims for unpaid wages because their FLSA and contract claim provided an adequate remedy at law. *See also Strom v. Goldman, Sachs & Co.*, 202 F.3d 138, 144 n.6 (2d Cir. 1999); *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 295 (E.D.N.Y. 2010) ("As [plaintiff's] New York Labor Law claim provides an adequate legal remedy for the conduct alleged, his equitable claims are hereby dismissed.") (citations omitted); *Crigger v. Fahnestock & Co.*, No. 01 Civ. 0781 (JFK), 2003 WL 22170607, at *15 (S.D.N.Y. Sept. 18, 2003).

Finally, Plaintiffs have failed to plead a cognizable claim for quantum meruit as they have not specified the reasonable value of the services they claim to have provided to Defendants. *See*, p. 17-18, *supra*, for the elements of a claim of quantum meruit. Plaintiffs' claim for quantum meruit and unjust enrichment is plainly based on the argument that they were not compensated for overtime and other alleged unpaid work time as set forth in their Complaint. (Compl., ¶¶ 159-169). However, Plaintiffs do not allege the reasonable value of the supposed services they provided to Defendants and this fatal omission renders their quantum meruit and unjust enrichment claim inadequate as a matter of law. *Fallon v. McKeon*, 230 A.D.2d 629, 630 (1st Dep't 1996) (dismissing claim for unjust enrichment for failing to identify the reasonable value of services rendered by the plaintiff).

(iv)    **Plaintiffs' Fraud Claim Should Be Dismissed**

Plaintiffs' fraud claim fails for a variety of reasons as well and should be dismissed.

First, Plaintiffs' fraud claim is premised on the same allegations as their breach of contract claims and therefore should be dismissed as duplicative. "It is well settled under New York law that a party cannot maintain overlapping fraud and breach of contract claims." *Stillman v. Townsend*, No. 05 civ. 6612 (WHP), 2006 WL 2067035, at *6 (S.D.N.Y. July 26, 2006) (*citing New York Univ.*, 87 N.Y.2d at 318). Nonetheless, Plaintiffs here attempt to maintain an action for fraud that simply restates their claims for breach of contract. For example, Plaintiffs' fraud claim alleges that:

- "[Defendants] deliberately concealed from [their] employees that they did not receive compensation for all the work they performed and misled them into believing they were being paid properly." (Compl., ¶ 171); and

- "Defendants misrepresented . . . to Plaintiffs and Class Members that they would be paid for all hours worked including those worked both under and in excess of forty in a work week." (Compl., ¶ 175).

These are precisely the same allegations upon which Plaintiffs premise their claims for breach of contract. (*Cf.* Compl., ¶¶ 140-155). In fact, Plaintiffs specifically allege that Defendants' alleged fraudulent misrepresentations "were material to the terms of Plaintiffs' and Class Members' employment contracts" and that Plaintiffs and Class Members "relied on the misrepresentations in agreeing to accept and continue employment with "defendants." (Compl., ¶ 178).

Because Plaintiffs cannot maintain a fraud claim arising out of the same facts as their claims for breach of contract, the fraud claim should be dismissed.

Second, even assuming, *arguendo*, that the fraud claim was not duplicative of their breach of contract claim, Plaintiffs have failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). "A complaint alleging fraud must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Cal Distrib., Inc. v. Cadbury Schweppes Ams. Bevs., Inc.*, No. 06 Civ. 0496 (RMB) (JCF), 2007 WL 54534, at *8 (S.D.N.Y. Jan. 5, 2007) (*citing Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 51 (2d Cir. 1995) (internal quotations and citation omitted)). *See also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted); *Clifford v. Hughson*, 992 F. Supp. 661, 666 (S.D.N.Y. 1998).

Plaintiffs have not alleged fraud with the particularity required by Fed. R. Civ. P. 9(b). Plaintiffs have not cited any specific fraudulent statements, identified any alleged speaker(s), stated where or when any alleged statements were made, or explained why any of

Defendants' purported statements were fraudulent. *See Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) (dismissal of fraud claim required when it "fails to specify the content of the alleged false statements [and] fails to state where and when particular statements were made"). Rather, Plaintiffs' Complaint relies solely on blanket allegations of misconduct in an attempt to impose liability on all the "defendants," but does not set forth with the required particularity the alleged fraudulent conduct of any "defendant." *cf. Sofi Classic S.A.,* 444 F. Supp. 2d at 248-49 (" 'Where fraud is alleged against multiple defendants, a plaintiff must plead with particularity by setting forth separately the acts complained of by each defendant.' ") (*quoting Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 641-42 (S.D.N.Y. 1999)). Plaintiffs' fraud claim relies only on boilerplate and conclusory allegations and therefore clearly falls short of the particularity requirement set forth in Fed. R. Civ. P. 9(b).

Finally, Plaintiffs cannot pursue fraud claims against the four named defendants based on blanket allegations of fraudulent conduct by one of the other, non-defendant entities. Instead, any fraud claim can only be asserted against each individual's actual employer. As discussed in the motion to dismiss submitted by New York-Presbyterian Healthcare System, Inc., Dr. Pardes and Mr. Osten, Plaintiffs cannot establish a joint employment relationship between the four named defendants or between any of the named defendants and the over 500 other entities listed in the Complaint. As with their statutory causes of action under the FLSA, Plaintiffs' inability to overcome this threshold issue fatally undermines their claims for fraud.

Allowing Plaintiffs to proceed with fraud claims against the four named defendants based on the alleged misconduct of someone else would clearly thwart the policy goals underlying Fed. R. Civ. 9(b).

Accordingly, Plaintiffs' fraud claims should be dismissed.

**(v)      Plaintiffs' Negligent Misrepresentation Claim Should Be Dismissed.**

Plaintiffs also have failed to set forth a cognizable claim of negligent misrepresentation.

First, as with Plaintiffs' fraud claim, their cause of action for negligent misrepresentation – which is premised on precisely the same allegations of fraud – does not contain sufficient factual content to comply with the stringent pleading standards required by Fed. R. Civ. P. 9(b). *See eBusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC*, No. 08 Civ. 09101 (PKC), 2009 WL 5179535, at *13 (S.D.N.Y. Dec. 29, 2009) (holding that a negligent misrepresentation claim must meet the pleading standards of Fed. R. Civ. P. 9(b) and collecting cases). Consequently, Plaintiffs' negligent misrepresentation claim fails because of the same pleading deficiencies with respect to their cause of action for fraud. *See* pp. 30-31, *supra*.

Second, even if Plaintiffs had met the stringent pleading requirements of Fed. R. Civ. P. 9(b), Plaintiffs' negligent misrepresentation claim also fails because the Complaint does not plead the existence of a "special relationship"--a required element for a negligent misrepresentation cause of action. *See* pp. 18-19, n.10 for the elements of a claim of negligent misrepresentation; *see also  Kwon v. Yun*, 606 F. Supp. 2d 344, 356 (S.D.N.Y. 2009) (*quoting Hydro Investors, Inc. v. Trafalgar Power, Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). A special relationship may exist when (1) the person making the representation held or appeared to hold unique or special expertise or (2) a special relationship of trust or confidence exists between the parties. *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).

Here, Plaintiffs plead absolutely no facts attempting to establish the existence of a special relationship with Defendants and none exists. Rather, Plaintiffs appear to premise their negligent misrepresentation claims solely on their employment relationship. However, " 'the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation.' " *Emmons v. City Univ. of N.Y.*, ___ F. Supp. 2d ___, 2010 WL 2246413, at *20 (E.D.N.Y. June 1, 2010) (*quoting Kwon*, 606 F. Supp. 2d at 356-57 and *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at **10-11 (S.D.N.Y. Dec. 10, 2007)).

Given the lack of any allegations of a "special relationship" between the parties, Plaintiffs' negligent misrepresentation claim should be dismissed.

### (vi)   Plaintiffs' Conversion Claim Should Be Dismissed.

Plaintiffs' claim for conversion suffers from many of the same deficiencies as their other common law claims.

" 'New York law recognizes an action for conversion of money, but requires the Plaintiff to have 'ownership, possession or control of the money' before its conversion.' " *Fantozzi v. Axsys Techs., Inc.*, No. 07 Civ. 02667, 2008 WL 4866054, at *9 (S.D.N.Y. Nov. 6, 2008) (*quoting ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 433 (S.D.N.Y. 1998) (citation omitted)). In the present case, Plaintiffs are not seeking the return of tangible monies but instead are trying to enforce an "obligation to pay." (Compl., ¶ 186) New York law is clear that merely seeking to enforce an "obligation to pay" does not give rise to a claim for conversion. *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 883-84 (1st Dep't 1982). Because Plaintiffs cannot establish that they ever had "possession" of their alleged unpaid wages, their conversion claim should be dismissed.

Second, Plaintiffs' conversion claim should be dismissed because an action for conversion cannot be maintained " 'where damages are merely being sought for breach of contract.' " *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (*citing Peters Griffin Woodward, Inc.*, 88 A.D.2d at 884 (citation omitted). This well-established principle is dispositive of Plaintiffs' conversion claim and renders it insufficient as a matter of law. *See Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 306 (1st Dep't 2003).

Finally, Plaintiffs have failed to plead the required elements of a conversion claim. *See* p. 20, n.11, *supra*, for the elements of a claim of conversion; *see also Stadt v. Fox News Network LLC*, ___F. Supp. 2d ___, 2010 WL 2540957, at *3 (S.D.N.Y. June 22, 2010) (*quoting Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 53 (2d Cir. 1993)). Moreover, a "demand for return and a refusal are required to state a claim for conversion under New York law." *Id.* at *6 n.71 (*citing Schwartz*, 984 F.2d at 54). Plaintiffs have failed to allege that they made a demand for any alleged unpaid wages or those Defendants refused to pay such wages after receiving Plaintiffs' demand. *Stadt*, 2010 WL 2540957, at *3. Plaintiffs' conversion claim should be dismissed.

## POINT IV

## PLAINTIFFS' ESTOPPEL CLAIM FAILS AS A MATTER OF LAW

Plaintiffs attempt to assert a cause of action for estoppel, alleging that "Defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members." (Compl., ¶ 227). Plaintiffs' estoppel claim must be dismissed because "[t]here is no distinct equitable estoppel cause of action under New York law." *Gaind v. Pierot*, No. 34-CV 9407, 2006 WL 846268, at *8 (S.D.N.Y. Mar. 31, 2006), *aff'd*, 282 F. App'x 946 (2d Cir. 2008); *see also Tierney v. Omnicom Group*, No. 06 Civ. 14302 (LTS) (THK), 2007 WL

2012412, at *10 (S.D.N.Y. July 11, 2007) (dismissing claim for estoppel because it is not a cause of action).

## POINT V

### PLAINTIFFS' RICO CLAIM FAILS

**A.      Plaintiffs' RICO Claim Suffers from Multiple**
**Pleading Flaws and Should be Dismissed**

Plaintiffs fail to allege facts sufficient to establish the elements of a RICO claim because they fail to (i) properly plead a predicate act; (ii) allege a pattern of racketeering activity; and (iii) properly plead a RICO enterprise. *See* 18 U.S.C. §§ 161 *et seq.*; 18 U.S.C. §§ 164 *et seq.*; *see generally Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85 (2d Cir. 1999). This claim should be dismissed.

### (i)      Plaintiffs' Fail to Properly Plead a Predicate Act

To state a civil claim under RICO, a plaintiff must first allege that the defendant has violated the substantive RICO statute. 18 U.S.C. § 1962; *Barrus*, 2010 WL 3075330 at *14. In so doing, a plaintiff must allege that the defendant committed two or more "predicate" acts, constituting a "pattern" of "racketeering activity." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). The specific predicate acts that constitute racketeering activity are enumerated in the statute, which include the crime of mail fraud. *Gross v. Waywell*, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009); 18 U.S.C. § 1961(1). Although Plaintiffs identify mail fraud as the required predicate act, they fail to sufficiently allege mail fraud.

### (a)      Plaintiffs Fail to Satisfy the Specificity
### Requirement of Rule 9(b)

In order to plead mail fraud in violation of 18 U.S.C. § 1341, a plaintiff must allege that: (1) defendant engaged in a scheme or artifice to defraud by means of false pretenses,

representations, or promises; (2) defendant used the mail for the purposes of executing the scheme; and (3) defendant possessed specific intent to defraud. *United States v. Ramirez*, 420 F.3d 134, 144 (2d Cir. 2005); *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 136-37 (E.D.N.Y. 2010). In addition, Plaintiffs must plead the fraud with the specificity that Federal Rule 9(b) requires of all claims sounding in fraud. *See* Fed. R. Civ. P. 9(b); *see also Newman v. L.F. Rothschild, Unterberg, Towbin*, 651 F. Supp. 160, 162 (S.D.N.Y. 1986) (holding that 9(b)'s requirements are applicable to RICO predicate acts sounding in fraud). "Rule 9(b)'s heightened particularity requirement [has] special urgency in civil RICO actions, due to the intrinsically vague nature of RICO claims and the significant fairness interest in ensuring defendants adequate notice of the charges brought against them." *Procapui-Productores de Camaroes De Icapui Ltda. v. Layani*, No. 07-CV-6627 (BSJ), 2008 WL 3338199, at *3 (S.D.N.Y. Jan. 11, 2008) (citation omitted). *See also* pp. 30 – 31 *supra*, detailing the pleading requirements of Rule 9(b).

The Complaint must therefore "set forth 'the content of the items mailed and specify how each of the items was false and misleading.'" *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 323 (E.D.N.Y. 2004) (citation omitted). *See Greenes v. Empire Blue Cross & Blue Shield*, No. 92 civ. 8599, 1996 WL 640873, at *5 (S.D.N.Y. Nov. 4, 1996); *see also Leung v. Law*, 387 F. Supp. 2d 105, 114 (E.D.N.Y. 2005) (Rule 9(b) is not satisfied where plaintiffs "name[d] whole documents, each of which encompasses numerous discrete statements, and allege[d], in vague and sweeping language, that each of these documents contained one or more false statements").

Here, the Complaint simply provides a laundry list of conclusory allegations, which fail to specify time, place, speaker, or content. (*See, e.g.*, Compl., ¶¶ 114, 120, 123-125.) This is deficient as a matter of law. *See Lavian v. Haghnazari*, 884 F. Supp. 670, 675 (E.D.N.Y.

1995) (complaints containing mere conclusory allegations of fraud and that " 'fail to specify time, place, speaker and . . . content of alleged misrepresentations, lack the 'particulars' required by rule 9(b)' ") (citation omitted.)

This defect is not cured by Plaintiffs' indistinct allegations that "[w]hen questioned by employees about the Meal and Break Deduction Policy, the defendants affirmatively stated that the employees were being fully paid for the work time for which they were entitled to be paid . . ." (Compl., ¶ 81). These alleged oral misrepresentations do not support Plaintiffs' RICO claim, because the purported common law fraud alleged does not constitute a predicate act under RICO. *SKS Constr., Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 77 (E.D.N.Y. 2006) ("While federal mail and wire fraud constitute RICO predicate acts, common law fraud under state law does not constitute such an act.") (citation omitted). Regardless, these allegations remain deficient because they lack the specific details required by Rule 9(b) as mentioned above. In fact, they contain the same allegations that appear, word-for-word, in the lawsuits Plaintiffs' counsel has filed against many other hospitals in the New York metropolitan area.[13]

Second, Plaintiffs violated the requirement that, where multiple defendants are involved, the complaint "must inform each defendant of the nature of his alleged participation in the fraud." *Clifford*, 992 F. Supp. at 666 (citation omitted). A plaintiff may not rely upon "sweeping references" that encompass all defendants without particularizing the involvement of

---

[13] *Compare* Compl., ¶¶ 106-131 to *Megginson v. Westchester Medical Center, et al.*, No. 7:10-cv-02683 (S.D.N.Y.), Am. Compl., ¶¶ 105-130; *Alamu v. The Bronx-Lebanon Hospital Center, et al.*,  No. 10-cv-3247 (S.D.N.Y), Am. Compl., ¶¶ 108-133; *Yarus v. New York City Health and Hospitals Corp., et al.*, No. 10-cv-02662 (S.D.N.Y.), Am. Compl., ¶¶ 96-121; *Wolman v. Long Island Health Network, Inc.*, No. 2:10-CV-01326 (E.D.N.Y.), Am. Compl., ¶¶ 90-115; *Sampson v. Medisys Health Network Inc., et al*, No. 2:10-cv-01342 (E.D.N.Y.), Am. Compl., ¶¶ 108-133; *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, et al., No. 10-CV-1341 (E.D.N.Y.), Am. Compl., ¶¶ 113-138.

each defendant. *McNamara v. City of New York*, Nov 05 CV 6026, 2007 WL 1062564, at *4 (E.D.N.Y. Mar. 30, 2007). Because Plaintiffs have asserted identical allegations against each of the hundreds of entities styled as "defendants," NYPH is prevented from ascertaining the specific nature of its alleged participation in the RICO enterprise or the specific nature of their participation in the alleged fraud. (*See* Compl., ¶¶ 106-115, 117-123, 127-128.) This, too, renders the Complaint insufficient as a matter of law with respect to the RICO claims. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.' ") (citation omitted).

Finally, Plaintiffs fail to state the time frame encompassed by their Complaint. Therefore, NYPH has no means of ascertaining the checks about which Plaintiffs complain, and thus have no means of determining whether some or all of the allegations in the Complaint are time-barred. *Virginia Sur. Co. v. Macedo*, Civ. A. No. 08-5586, 2009 WL 3230909, at *8 (D.N.J. Sept. 30, 2009) ("[m]erely stating a broad time period ... during which the Defendants allegedly communicated with each other through use of the mails and wires to further the fraudulent scheme is insufficiently precise to meet the pleading requirements of Rule 9(b)."). This, too, constitutes a basis for dismissal.

### (b) Plaintiffs Fail To Identify The Purpose Of The Mailing

To establish a predicate act, plaintiffs asserting mail fraud must also identify the purpose of the mailing within the defendant's fraudulent scheme. *McLaughlin v. Anderson*, 962 F.2d 187, 190-91 (2d Cir. 1992) (*citing Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F. 2d 187, 196 (9th Cir. 1987) and *Sears v. Likens*, 912 F. 2d 889, 893 (7th Cir. 1990)); *Barrus*, 2010 WL 3075730, at *15.

Plaintiffs are unable to establish how the mailings furthered the alleged fraud. Even if the paychecks had been mailed, taking Plaintiffs' allegations as true (which NYPH does not concede), the use of the mail was not in furtherance of the allegedly fraudulent scheme because the success of the scheme was not dependent upon the mailings, "either in obtaining the desired object or in avoiding or delaying detection of the scheme." *United States v. Greenleaf*, 692 F.2d 182, 186 (1st Cir. 1982) (citation omitted); *see also United States v. Pachecho-Ortiz*, 889 F.2d 301, 305 (1st Cir. 1989) ("[T]he scheme's completion or the prevention of its detection must have depended in some way on the mailings.") (internal quotation marks and citations omitted).

Again taking Plaintiffs' allegations as true for the purposes of this motion, Plaintiffs and any other member of a potential class would have been paid the same amount whether their paychecks were mailed or not. More important, the alleged mailings would not have prevented the detection of the alleged scheme, but rather would have "made the scheme's discovery more likely" because any failure to properly pay Plaintiffs for time worked would have been plainly observable on the face of these checks at the time Plaintiffs received them. *See Cavallaro v. UMass Mem. Health Care Inc.*, No. 09-CV-40152, 2010 WL 3609535, at *4 (D. Mass. July 2, 2010) (dismissing RICO claims, in relevant part, because the information provided on plaintiff employees' paychecks would "serve to expose, not further, the alleged fraud").

    (c)    **Plaintiffs Fail to Allege Facts Giving Rise To a Strong Inference of Fraudulent Intent**

In order to adequately plead mail fraud, a plaintiff also must "allege facts that give rise to a strong inference of fraudulent intent." *Moore v. PaineWebber, Inc.*, 189 F.3d 165,

173 (2d Cir. 1999) (internal quotation marks and citation omitted).  Plaintiffs have failed in this regard as well.

Mail fraud requires a specific intent to defraud.  *See State Farm Mut. Auto, Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 227 (E.D.N.Y. 2009).  "Acts done inadvertently, mistakenly, or in good faith" cannot satisfy the elements of the statute.  *O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 706 (2d Cir. 1990).  Under Rule 9(b), plaintiffs are required to "allege facts which give rise to a strong inference of fraudulent intent," specifically:  (1) facts demonstrating that the defendant had both the motive and opportunity to commit the fraud; or (2) facts showing strong circumstantial evidence of conscious behavior or recklessness.  *Alnwick v. European Micro Holdings, Inc.*, 281 F. Supp. 2d 629, 641 (E.D.N.Y. 2003).  Plaintiffs do not allege sufficiently either of those things.

First, Plaintiffs do not allege sufficiently a motive to commit fraud.  They only allege that NYPH and the other entities sought to take their money: "defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs' and Class Members out of their property and to convert Plaintiffs' and Class Members' property, including their wages and/or overtime pay." (Compl., ¶ 107).  A "generalized profit motive that could be imputed to any company," however, "has been consistently rejected as a basis for inferring fraudulent intent." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, No. 07-CV-1471, 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009) (citations omitted).

Second, plaintiffs fail to allege circumstantial evidence of conscious behavior or recklessness.  The fact that Plaintiffs' Complaint is neither specific to any fraud, nor specific to any named or so-called defendant, coupled with its failure to identify the role of the mailings in the alleged scheme, precludes a finding of a strong inference of fraudulent intent.  To further

underscore this failure, NYPH notes that in *Barrus*, 2010 WL 3075730, the complaint by Thomas & Solomon LLP – the same law firm representing Plaintiffs in the instant action and six other sets of plaintiffs in the New York metropolitan area alone – was dismissed because its fraud allegations failed to satisfy the specificity requirements of Rule 9(b).  2010 WL 3075730, at *15.  Importantly, in support of this decision, the court cited three allegations from the complaint purporting to allege mail fraud, all of which are contained – almost verbatim – in the Complaint here.  *Id.* at *14 (Compl., ¶¶ 109, 110, 113.)  It cannot be reasonably concluded that the heightened pleading standards applicable to fraud claims in general, and RICO claims in particular, are satisfied where no fewer than 60 defendants in six other separate actions are accused of the identical improprieties. *See* p. 37, n.13, *supra.*

### (ii)    Failure to Allege Pattern of Racketeering Activity

In order to adequately plead mail fraud, a plaintiff must also plead a *pattern* of racketeering activity.  *Barrus*, 2010 WL 3075730, at *16.  In order to constitute a pattern of racketeering activity, the predicate acts must:  (a) be related; and (b) reveal the threat of continued, criminal conduct. *Lavian,* 884 F. Supp. at 682.  Given that, as shown above, Plaintiffs have failed to allege in legally sufficient fashion the occurrence of a single predicate act, then, by definition they have not properly alleged a pattern of such acts.

This conclusion remains unaltered despite the multiplicity of mailings alleged by Plaintiffs. *Cf. United States Textiles, Inc. v. Anheuser-Busch Cos.*, 911 F.2d 1261 (7th Cir. 1990).  This is particularly so given that " 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.' " *Gross*, 628 F. Supp. 2d at 487 (*citing Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)).

**(iii)    Plaintiffs Fail To Allege An Individual**
**Defendant Distinct From the "Enterprise"**

Section 1962(c) of the RICO Act, which Plaintiffs allege was violated, provides in

part that, "[i]t shall be unlawful for any person employed by or associated with any enterprise

engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity…." 18 U.S.C. § 1962(c).

" 'Because [Section] 1962(c) speaks separately of a RICO 'person' acting on or

conducting the affairs of the 'enterprise,' which clearly envisions two entities, a plaintiff must

also comply with the rule that the RICO person and enterprise referred to must be distinct.' "

*See City of New York v. CYCO.net, Inc.*, 383 F. Supp. 2d 526, 546-47 (S.D.N.Y. 2005) (*citing*

*G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 546 (S.D.N.Y. 2002)).    Where

"employees of a corporation associate together to commit a pattern of predicate acts in the course

of their employment and on behalf of the corporation, the employees in association with the

corporation do not form an enterprise distinct from the corporation." *Riverwoods Chappaqua*

*Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (citation omitted).

Here, Plaintiffs list the four Named Defendants and label them as "defendants."

(Compl., ¶ 18.)   Then, Plaintiffs list all allegedly related "health care centers and facilities"

("Health Centers") and "affiliated health care facilities and centers" ("Affiliates").   (Compl.,

¶¶ 19, 20.)  Finally, the Complaint labels the Named Defendants, Health Centers, and Affiliates

as "New York-Presbyterian Healthcare System" or "defendants" and alleges that New York-

Presbyterian Healthcare System is an enterprise. (Compl., ¶¶ 21, 22).  The plain meaning of this

series of allegations is that all Named Defendants and related facilities (i.e., "defendants") make

up the enterprise. However, the defendants must either be part of the enterprise that is required in order to sustain the claim, or the actors – they cannot be both. *Cyco.net, Inc.,* 383 F. Supp. 2d at 546-47. Because Plaintiffs fail to allege the existence of a RICO enterprise that is distinct from the RICO persons they seek to hold liable, their RICO claims must be dismissed as legally insufficient.

Furthermore, where a plaintiff alleges that a defendant is an actor, rather than the enterprise, it must also allege that the defendant " '[has] some part in directing [the enterprise's] affairs.' " *First Capital Asset Mgmt. v. Satinwood, Inc.,* 385 F.3d 159, 176 (2d Cir. 2004) (citation omitted). There is no such allegation in the Complaint; Plaintiffs' attempt to cast two officers, acting on behalf of "defendants," as the "persons" required to satisfy Section 1962(c) is similarly insufficient. *See Riverwoods,* 30 F.3d at 344; *see also Physicians Mut. Ins. Co. v. Greystone Servicing Corp.,* No. 07 Civ. 10490, 2009 WL 855648, at *7 (S.D.N.Y. Mar. 25, 2009). Moreover, Plaintiffs must still allege that the named defendants and the others constitute an "enterprise," meaning that they share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve that purpose. Given the pleading requirements set forth by *Twombly,* 550 U.S. at 555 and *Ashcroft,* 129 S.Ct. 1937, the rote recitation contained in Paragraphs 18 through 31 of the Complaint fails in this regard as well.

**B. Even if Plaintiffs Had Adequately Pleaded a RICO Claim, They Lack Standing to Pursue a RICO Claim**

In addition to the Complaint's pleading deficiencies that render it fatally flawed, Plaintiffs lack standing to pursue their RICO claim – which necessarily includes the fraud and negligent misrepresentation claims – against NYPH.

In the Second Circuit, a plaintiff must satisfy the following conditions in order to establish its standing to assert a RICO claim: (1) a violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) causation of the injury by the violation. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222 (2d Cir. 2008) (citation omitted). A plaintiff must show "not only that the defendant's alleged RICO violation was the 'but-for' cause or the cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *Oak Beverages, Inc. v. Tomra of Massachusetts, L.L.C.*, 96 F. Supp. 2d 336, 342-43 (S.D.N.Y. 2000) (citation omitted). This requirement demands a showing of " 'some direct relation between the injury asserted and the injurious conduct alleged. A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient.' " *Hemi Group, LLC v. City of New York, N.Y.*, 130 S. Ct. 983, 989 (2010) (citation omitted). Plaintiffs failed to meet these standards.

The only RICO predicate act that Plaintiffs allege consists of mail fraud – specifically, "Defendants' predicate acts of mailing the misleading payroll checks...." (Compl., ¶ 113.) As noted above, however (*see* p. 36, *supra*), a violation of the FLSA statute does not constitute a predicate act under RICO. *See* 18 U.S.C. § 1961.

Moreover, to establish a RICO claim, "a plaintiff must show . . . that the injury was caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (citation omitted). In furtherance of this requirement, a plaintiff must plead facts that "establish a link between the claimed injury and the predicate acts alleged." *Frangipani v. HBO*, No. 08 civ. 5675, 2010 WL 1253609, at *8 (S.D.N.Y. Mar. 16, 2010). Accordingly, a plaintiff " 'does not have standing if he suffers an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violation committed by the defendants.' " *Makowski v.*

*United Bhd. of Carpentrs & Joiners of Am.*, No. 08 Civ. 6150, 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (citation omitted).

Here, the injury for which Plaintiffs seek to recover arises from alleged underlying wage and hour violations, not from the mailing of the paychecks. Thus, Plaintiffs fail to allege that the predicate acts for the RICO claim – the alleged mail fraud – caused Plaintiffs' injury. This is only logical given that it is not the alleged mailing of the payroll check (*see* pp. 38-39, *supra*) that caused Plaintiffs' alleged injury, but rather the alleged failure to convey a proper wage. This also renders the RICO claim legally insufficient. *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995).

Even if Plaintiffs had alleged sufficiently the predicate acts of mail fraud and that the alleged FLSA wage violation was the "but-for" cause of their injuries, they fail to plead facts showing that the mail fraud was the proximate cause of the those injuries. The mailing of a misleading paycheck is not the cause of the alleged wage underpayments; the cause of such alleged injury is the failure to record and compensate all the time worked. *See Hemi Group, LLC*, 130 S. Ct. at 990.

## C.     Plaintiffs' RICO Claim Is Preempted by the FLSA

Plaintiffs' only potential claim against NYPH is one for unpaid wages under the FLSA. But the FLSA sets forth an elaborate statutory scheme with exclusive remedies for violations of its terms. *See* 29 U.S.C. §§ 206, 207, 216, 216(b); *Kendall v. City of Chesapeake*, 174 F.3d 437, 443 (4th Cir. 1999); *Sara Lee Corp.*, 508 F.3d at 194 ("Congress prescribed exclusive remedies in the FLSA for violations of its mandates."); *Roman*, 147 F.3d at 76 (" 'the FLSA is the exclusive remedy for enforcement of rights created under the FLSA' ") (citation omitted); *Petras*, 1993 WL 228014, at *2

Thus when, as here, a plaintiff brings a RICO claim in conjunction with a FLSA claim, and the same alleged facts support both claims, under the doctrine of conflict preemption, the FLSA preempts the RICO cause of action. *See Eldred v. Comforce, Corp.*, No. 3:08-cv-1171, 2010 WL 812698, at *10 (N.D.N.Y. Mar. 2, 2010) (dismissing RICO claim as preempted by FLSA because FLSA " 'provides a sufficiently punitive scheme' "); *Choimbol v. Fairfield Resorts, Inc.*, No. 05 CV 463, 2006 WL 2631791, at *7 (E.D. Va. Sept. 11, 2006) (dismissing plaintiffs' RICO claims on the ground that FLSA's " 'unusually elaborate' enforcement scheme manifested Congress' desire to exclusively define the private remedies available to redress violations of the statute's terms") (citations omitted).

Consequently, this Court should dismiss Plaintiffs' RICO claim as preempted by the FLSA.

## POINT VI

### TO THE EXTENT ANY OF PLAINTIFFS' CLAIMS SURVIVE, THE COMPLAINT MUST STILL BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING

To satisfy the case-or-controversy requirement of Article III of the United States Constitution, Plaintiffs must show that they have "suffered 'injury in fact,'. . . and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61(1992)). *See also Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medo Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.")

The requirement of standing is not lessened for an individual plaintiff where that plaintiff files a class action complaint: "[t]he principles at the heart of Article III standing are

simply too important to permit such bootstrapping" of a suit against a defendant on the theory that some member of a hypothetical class, if a class were certified, might have a claim against that defendant. *In Re Eaton Vance Corp. Secs. Litig.*, 220 F.R.D. 162, 169 (D. Mass. 2004) (holding named class action plaintiffs failed to establish standing as to two defendants from whom they did not personally purchase shares). Plaintiffs lack standing for three reasons.

First, as discussed above, each of Plaintiffs' claims is infirm and must be dismissed. Since they cannot state a claim for relief on their own behalf, they cannot do so on behalf of any putative class member. *See, e.g., Pruell,* 2010 WL 3789318, at *4 ("The action is currently brought on behalf of *two* named plaintiffs. To survive a motion to dismiss, the allegations of at least one named plaintiff must state a claim for relief.") *(citing O'Shea v. Littleton,* 414 U.S. 488, 494 (1974) (" '[i]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class' ")); *Aimis Art Corp. v. N. Trust Secs., Inc.,* 641 F. Supp. 2d 314, 321 (S.D.N.Y. 2009) ("Named class plaintiffs must 'allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.' ") (citation omitted).

Second, Plaintiffs fail to allege in their Complaint that they were employed by a particular defendant. Rather, Plaintiffs allege only that "[a]t all relevant times, Masahiro Nakahata and Diana Gardocki ('Plaintiffs') were employees of defendants, employed within this District and one of the Named Plaintiffs resides within this District." (Compl., ¶ 62.) Nowhere is it alleged with whom Plaintiffs were actually employed out of the over 500 entities listed as "defendants." (Compl., ¶¶ 18-20.) Because Plaintiffs have not alleged that they were employed

by any particular defendant, Plaintiffs have no basis to assert that they are owed any wages, and thus Plaintiffs have not alleged that they were injured in any manner by any particular defendant. Courts have routinely dismissed claims against defendants for lack of standing where there are no facts to show that the plaintiff was caused harm by the particular defendant. *See, e.g., Lucas v. BMS Enters., Inc.*, Civ. A. No. 3:09-cv-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) (dismissing putative FLSA collective action against seven related companies where the plaintiffs alleged a common enterprise with a scheme to deprive them of overtime pay but failed to allege injuries that each defendant caused to them and holding that "a named plaintiff in a collective action has adequately pleaded standing against a particular defendant only if the plaintiff has alleged an injury that defendant caused to him"); *Daughtery v. I-Flow, Inc.*, Civ. Action No. 3:09-cv-2120-P, 2010 U.S. Dist. LEXIS 49038, at *8 (N.D. Tex. Apr. 28, 2010) (dismissing plaintiff's direct and class claims because he failed to plead "allegations sufficient or specific enough" to show a "causal connection between his injury and the conduct of any particular defendant(s)").

Finally, as salaried employees, plaintiffs are not "part of the class they seek to represent" on their wage claims. The Complaint is brought by Nakahata and Gardocki "on behalf of themselves and all other employees similarly situated." (Compl., Caption.) Based on this, Plaintiffs seek to represent "a class...of current and former employees who worked for defendants, were paid hourly and were not paid for all the time they worked including applicable premium pay." (Compl., ¶ 10.) (*See also* Compl., ¶¶ 132, 161, 191) (characterizing the wage and hour class as consisting of "hourly" employees.) The problem, however, is that Plaintiffs were

salaried employees, not hourly employees.[14] (*See* Minsky Aff., ¶ 5, Ex. A, §§ 1, 6, Schedule

A.) As such, Plaintiffs cannot establish that they have suffered an injury in fact arising out of

Defendants alleged failure to properly compensate "hourly" employees for work alleged to have

been performed. Accordingly, they lack standing to pursue the claims asserted in the Complaint

on their own behalves and on behalf of all hourly employees. *See, e.g., Faria v. Allstate*

*Merchant Serv., LLC*, No. 09 Civ. 7444, 2010 WL 1541576, at *2 (S.D.N.Y. Apr. 13, 2010) ("It

appears, however, that Gumbs was no more than a 'trainee' while working for defendant Allstate

Merchant Service, a position which involved different responsibilities and different

compensation than those referenced in the outstanding Second Amended Complaint. . . .

Therefore, he cannot be an adequate representative.") (*citing East Tex. Motor Freight Sys. Inc.*

*v. Rodriquez*, 431 U.S. 395, 403 (1977) (class representative must be member of class, possess

the same interest, and suffer same injury as rest of class.); Fed. R. Civ. P. 23(a) ("One or more

members of a class may sue or be sued as representative parties on behalf of all members. . .").

---

[14] In considering Defendants' motion pursuant to Fed. R. Civ. P. Rule 12(b)(1), the Court can (and routinely does where necessary and appropriate) consider materials beyond the "four corners of the Complaint". *See, e.g., Phifer v. City of N.Y.*, 289 F.3d 49, 55 (2d Cir. 2002); *John Street Leasehold, LLC v. Capital Mgmt. Res., L.P.*, 154 F. Supp. 2d 527, 533-34 (S.D.N.Y. 2001), *aff'd*, 283 F.3d 73 (2d Cir. 2002).

## Conclusion

For the foregoing reasons, Defendant The New York and Presbyterian Hospital respectfully requests an Order dismissing the Second Amended Complaint against it in its entirety.

New York, New York
November 15, 2010

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By:  /s/ Kenneth J. Kelly
　　　　Kenneth J. Kelly
　　　　James S. Frank
　　　　Kenneth W. DiGia
　　250 Park Avenue
　　New York, New York  10177-1211
　　(212) 351-4500

WILLKIE FARR & GALLAGHER

By:  /s/ Terence K. McLaughlin
　　　　Terence K. McLaughlin
　　787 Seventh Avenue
　　New York, NY 10019
　　(212) 728-8000

Attorneys for Defendant The New York
and Presbyterian Hospital