Kenneth J. Kelly
James S. Frank
Kenneth W. DiGia
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500

Terence K. McLaughlin
Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

Attorneys for Defendants
New York-Presbyterian Healthcare System, Inc.,
Herbert Pardes and Wayne Osten

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

MASAHIRO NAKAHATA and DIANA GARDOCKI,

on behalf of themselves and all other employees similarly situated,

                       Plaintiffs,

               - against -

NEW YORK-PRESBYTERIAN HEALTHCARE
SYSTEM, INC., THE NEW YORK AND
PRESBYTERIAN HOSPITAL, HERBERT PARDES,
AND WAYNE OSTEN,

                      Defendants.

------------------------------------- x

ECF CASE

Docket No. 10-cv-2661(PAC) (RLE)

# REPLY MEMORANDUM OF DEFENDANTS NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., HERBERT PARDES AND WAYNE OSTEN

## TABLE OF CONTENTS

Page

Argument ........................................................................................................................................3

    THE COMPLAINT FAILS TO ALLEGE FACTS SHOWING
    THAT THE DEFENDANTS WERE THEIR "EMPLOYER" ......................................................3

        A. The Broad Statutory Definition of "Employer"
           Is Not A Substitute for Plausible Factual Allegations ...............................................3

        B. Plaintiffs Have Failed to Allege Any Facts Supporting
           an "Integrated Enterprise" or "Joint Employer" Theory ...........................................6

        C. The Complaint Fails to Allege Facts Establishing
           Liability of the Individual Defendants......................................................................9

Conclusion ....................................................................................................................................11

Defendant New York-Presbyterian Healthcare System, Inc. ("System, Inc."), Dr. Herbert Pardes and Wayne Osten (collectively the "Moving Defendants") submit this memorandum in reply to Plaintiffs' memorandum of law ("Brief") in opposition to the Moving Defendants' motion to dismiss the second amended complaint (the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6).

Contrary to Plaintiffs' contention (Brief at 1-2), the Moving Defendants are not seeking a determination on the merits or the resolution of questions of fact. Rather, as is manifest from their opening brief, the Moving Defendants assert that although the Complaint is a 45-page, 227-paragraph opus, the actual allegations that supposedly provide the factual underpinning for holding the Moving Defendants liable for the compensation of the 52,000-plus employees of the 500-plus so-called "defendants" are found *only* at paragraphs 22 through 31, 38 and 39 of the Complaint, which state as follows:[1]

> 22. New York-Presbyterian Healthcare System [defined in the Complaint, ¶ 21, as the four Named Defendants, the "Health Centers" and the "Affiliates"] is an enterprise engaged in the operation of hospitals and/or the care of the sick and is a healthcare consortium.
>
> 23. Defendants [also defined in the Complaint, ¶ 21, as the four Named Defendants, the "Health Centers" and the "Affiliates"] operate over 260 health care facilities and centers and employ approximately 52,000 individuals.
>
> 24. Defendants describe themselves as one of the world's greatest healthcare systems.
>
> 25. Further, defendants claim they are the largest secular, not-for-profit healthcare system in the United States, and the largest not-for-profit employer in New York City.
>
> 26. In fact, New York-Presbyterian Healthcare System published a "System Standard" newsletter and "Member News," which highlight the healthcare initiatives of the member institutions.

---

[1] The same paragraphs also purport to form the factual predicate for holding defendant The New York and Presbyterian Hospital ("NYPH") equally liable. NYPH has joined in this motion. *See* NYPH's Memorandum in support of its separate motion to dismiss at page 2, fn 4.

NY:4789389v5

> 27. The System's website indicates in 2008 it employed over 52,000 full time employees and operated 24 acute care hospitals.
>
> 28. *Therefore*, defendants constitute an integrated, comprehensive, consolidated healthcare delivery system, offering a wide range of services. [Emphasis added.]
>
> 29. For example, defendants have centralized supply chain management, and financial, computer, payroll and health records systems that are integrated throughout their locations.
>
> 30. Defendants share common management, including oversight and management by a senior executive team and board of directors.
>
> 31. Defendants have common ownership. . . .
>
> 38. Defendants also engage in a joint venture of operational control for providing healthcare services by entering an agreement, established through their conduct in sharing the profits and losses.
>
> 39. Defendants jointly managed and controlled this venture, as well as its employees and assets.

These skeletal allegations - none of which even refers to labor or employment functions - do not provide any basis for the legal conclusions that the Named Defendants and the so-called non-party "defendants" are all some type of joint employers.

Virtually conceding that the Complaint relies on conclusory assertions with little or no supporting facts, Plaintiffs argue that Fed. R. Civ. P. 8 requires only "notice pleading, not fact pleading," but this misstates the law. As explained in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), Rule 8 "demands more that an unadorned, the-defendant-unlawfully-harmed-me accusation." (citation omitted) It is the Plaintiffs' burden to plead "*sufficient factual matter . . . 'to state a claim that is plausible on its face.'*" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 555) (emphasis added). While "legal conclusions can provide the framework of a complaint, they must be supported by *factual allegations*." *Id.* at

1950 (emphasis added). Pleadings, as here, that offer "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (*quoting Twombly*, 550 U.S. at 555).) The Second Circuit has recognized that, in the wake of *Twombly* and *Iqbal*, even notice pleading must be supported by facially plausible *factual allegations*. *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 358 (2d Cir. 2010).

Arguing that notice pleading suffices, Plaintiffs rely exclusively on irrelevant, pre-*Iqbal* cases that have no effect here. *(See, for example, Yoder v. Orthomolecular Nutrition Inst., Inc.,* 751 F.2d 555 (2d Cir. 1985) (securities fraud case), and *Weisman v. LeLandais,* 532 F.2d 308 (2d Cir. 1976) (false arrest case). Because the Complaint fails to allege sufficient plausible facts to give rise to liability under any theory, the Complaint should be dismissed.

## Argument

### THE COMPLAINT FAILS TO ALLEGE FACTS SHOWING THAT THE DEFENDANTS WERE THEIR "EMPLOYER"

**A.     The Broad Statutory Definition of "Employer" Is Not A Substitute for Plausible Factual Allegations**

Although it is well-established that the term "employer" as used in the FLSA was designed to go beyond the traditional common law concepts of master and servant, the breadth of the definition does not "sweep away" the pleading requirements of *Iqbal* and *Twombly*, as Plaintiffs would have it. (Brief at 7). Plaintiffs are still required to plead plausible facts that bring the defendants within the definition, no matter how broad it may be. Indeed, the very fact that the FLSA definition of "employer" is so broad and abstract, is all the more reason why, under *Iqbal's* proscription against pleading legal conclusions, a plaintiff must allege specific facts showing that a person or entity, not considered an "employer" under the common law, should be deemed to be one under the FLSA. Plaintiffs simply have not done this. Moreover, the repetition of the same vague and conclusory allegations in their opposition brief may attempt to create an illusion of substance, but that attempt fails.

Plaintiffs are not required, at this point, to "conclusively prove" (Brief at 6) defendants' status as their employer or the employer of the 52,000-plus army of workers allegedly employed by the so-called "defendants" or "the System," and the Moving Defendants do not make such an argument. The burden is on Plaintiffs, however, to set forth plausible facts that tend to support the claim that these particular Moving Defendants - System, Inc., Dr. Pardes and Mr. Osten - are FLSA "employers." Plaintiffs fail to recognize that because System, Inc. was organized "exclusively for charitable, religious, educational and scientific purposes" and is prohibited by its corporate charter from providing "hospital" or "health-related services,"[2] they must allege *more* than might be required to find one of the former defendant hospitals to be an "employer." Likewise, Plaintiffs' attempt to deem two natural persons to be the "employer" of 52,000-plus individuals requires more than vague allegations of "involvement" in management. The fact that the two individual defendants are at the top rung of the management ladder at NYPH and, thus, far removed from the day-to-day operations of NYPH's own workforce, let alone those of the multitude of "defendants" around the Tri-State region, mandates that Plaintiffs provide at least *some* plausible specifics tying them to the allegedly unlawful pay practices at issue in this case. They fail to do so.

The list of "facts" (Brief at 8-9) supposedly pleaded in the Complaint on its face shows that Plaintiffs have failed to allege any facts, let alone plausible ones, that tend to establish these three Moving Defendants are an "employer," no matter how broadly defined. The alleged "facts" are either pure conclusions of law, or abstract and therefore essentially meaningless statements. For example, Plaintiffs assert they have alleged:

1. "Defendants [notably, this is defined as all 500-plus of hospitals, clinics and "affiliates"] operate over 260 healthcare facilities . . . and employ approximately 52,000 individuals." *This allegation says nothing except that a large number of entities employs an even larger number of individuals.*

---

[2] *See* Osten Aff. ¶ 2, Ex. A.

2. "Defendants claim they are the largest secular, not-for-profit health care system in the United States." *Neither size nor non-profit status transforms any of the "defendants" into an employer of every other entity's employees.*

3. "System, Inc. publishes [a] newsletter." *This is not a criterion for being an FLSA "employer." Indeed, the articles in the sample newsletters underscore the fact that System, Inc. engages in educational and charitable activities, not managing hospitals.*[3]

4. "The system [sic] employees are directed by 'common management'" *is alleged without the slightest detail about who is the common management of the 500-plus "defendants" located in three states, or how such management is structured.*

5. Defendants have "suffered or permitted Plaintiffs or Class Members to perform work," *merely parrots the language of 29 U.S.C. § 203(g) (defining "employ" as "to suffer or permit to work"), which is precisely what Iqbal says should not be done.*

6. Dr. Pardes and Mr. Osten are "involved" in "fundraising" and "public relations," *which (even if true) is hardly a hallmark of an employee-employer relationship, no matter how broadly "employer" is defined or what "test" is used.*

Likewise, Plaintiffs allege in vague and conclusionary fashion that the two high level executives "control significant functions." (Brief at 9.) They are implausibly alleged in the Brief to be "involved" in "hiring and firing employees," "managing employees functions" and "making decisions" regarding "training and payroll." *Id.* In view of the fact that *Iqbal* and its progeny teach that determining whether a complaint states a "plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" (*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted)), the allegation that the Chief Executive Officer of New York's largest hospital and one of the City's

---

[3] Plaintiffs cannot attempt to cure deficiencies in the Complaint by introducing material outside of the Complaint itself or not subject to judicial notice. *See, e.g., Meadows v. Lesh*, No. 10-CV-00223, 2010 WL 3730105, at *4 (W.D.N.Y. Sept. 17, 2010) ("allegations made outside of the complaint introduced by plaintiffs . . . in opposition to motions to dismiss are not properly before the court on a motion to dismiss.") (*quoting Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 774 (S.D.N.Y. 2006)); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) ("it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.") (citations omitted).

largest employers spends his time hiring nurses like Plaintiffs and making payroll or overtime decisions – even for that hospital, much less for 500 healthcare institutions spanning three states - is far-fetched indeed. This is not different than alleging that the Chief Justice of the Supreme Court is "involved" in hiring legal assistants in the Southern District of New York and is thus their "employer."

In sum, the breadth of the definition of "employer" in the FLSA does not save the Complaint.

**B.     Plaintiffs Have Failed to Allege Any Facts Supporting an "Integrated Enterprise" or "Joint Employer" Theory**

In an attempt to justify their conclusory allegations in general, and not just as to the Moving Defendants, Plaintiffs cite to two theories or concepts used to hold entities liable for unpaid wages. It is important to discuss each concept briefly in order to show that Plaintiffs are citing theories and related multi-"factor" tests without any supporting factual allegations in the Complaint.

The two concepts were concisely described in *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982), as follows:

> The "joint employer" and "single employer" concepts are distinct. Admittedly, there has been a blurring of these concepts at times by some courts and by the Board. However, as the Supreme Court itself has recognized, the two concepts approach the issue of "who is the employer," from two different viewpoints. . . .
>
> A "single employer" relationship exists where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a "single employer." The question in the "single employer" situation, then is whether the two nominally independent enterprises, in reality, constitute only *one integrated enterprise*. . . .
>
> In answering questions of this type, the Board considers the four factors approved by the *Radio Union* court. (380 U.S. at 265, 85 S.Ct at 877): (1) functional integration of operations; (2) centralized control of labor relations; (3) common management;

> and (4) common ownership. Thus, the "single employer" standard is relevant to the determination that "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." [Citation omitted.] "Single employer" status ultimately depends on all the circumstances of the case and is characterized as an absence of an "arm's length relationship found among unintegrated companies."

*Lihli Fashions Corp. v. N.L.R.B.*, 80 F.3d 743 (2d Cir. 1996), cited by Plaintiffs is an example of the "single employer" concept, where Corp. A manufactured clothing marketed by Corp. B, the two sole owners of A each owned a third of B, and one of the owners was president of both A and B. *Browning-Ferris* continues (691 F.2d at 1122-23):

> In contrast, the "joint employer" concept does not depend upon the existence of a single enterprise and therefore the above-mentioned four factor standard is inapposite. Rather, a finding that companies are "joint employers" assumes in the first instance that companies are "what they appear to be" -- independent legal entities that have merely "historically chosen to handle jointly . . . important aspects of their employer-employee relationship." [Citation omitted.]

> In "joint employer" situations no finding of a lack of arm's length transaction or unity of control or ownership is required, as in "single employer" cases. As this Circuit has maintained since 1942, "[i]t is rather a matter of determining which of two, or whether both, respondents control, in the capacity of employer, the labor relations of a given group of workers." [Citation omitted.] The basis of the finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees *who are employed by the other employers*. [Citation omitted.] Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment. [Citations omitted] [Emphasis added and in original.]

Courts have listed various multi-part "factors" used to determine whether distinct entities are either "integrated" or "joint" employers, but in essence such factors boil down to four concrete "economic realities" essential for the status of an employer: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee

work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Comty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (citation omitted). Amazingly, the Complaint here (quoted above at 1-2) fails to make any such specific factual allegations as to *any* of the former defendant hospitals, the "Health Centers" or the "Affiliates," let alone the Moving Defendants or NYPH.

Simply put, superlatives such as one of "the worlds' greatest" systems, the issuance of newsletters, and having 52,000-plus individuals employed at two dozen hospitals does not an employer make - under any theory or concept. Neither do vague and conclusory allegations (Brief at 12) that "plaintiffs and Class Members are or have been employed by the Healthcare System [meaning all of the so-called defendants] and/or [sic] are jointly employed by the Healthcare System," or the "Healthcare System comprises a single integrated enterprise . . . through common control for a common business purpose." Lacking any facts showing the "share[d] common management, including . . . a senior executive team," such a pleading cannot stand.

The "integrated enterprise" and "joint employer" theories are all well and good, but, since *Iqbal*, a complaint needs to plead at least a bare minimum of plausible facts to support the conclusion that an entity is liable as an employer under either of such theories. The Complaint here does not even come close to such an allegation. Moreover, Plaintiffs make it clear (Brief at 16-17) that they disclaim reliance on any flawed "enterprise" theory of liability. As shown in the Moving Defendants' opening brief (at 18-21), the existence of an "enterprise" for coverage under the FLSA does not give rise to liability if an employer-employee relationship is lacking. *See, e.g., Rogers v. KAR Holdings, Inc.*, No. 8:08-cv-602-T-30 TGW, 2008 WL 4059767, at *3 (M.D. Fla. Aug. 27, 2008); *Cannon v. Douglas Elliman, LLC*, No. 06 Civ. 7092 (NRB), 2007 WL 4358456, at *4 n.3 (S.D.N.Y. Dec. 10, 2007). Here, the Complaint does not allege plausible and detailed facts establishing *either* a section 203(r) "enterprise" *or* any employer-employee relationship between Plaintiffs and the Moving Defendants.

## C. The Complaint Fails to Allege Facts Establishing Liability of the Individual Defendants

Plaintiffs' arguments as to the two individual defendants exemplifies the same flaw as the other arguments, namely, the principles of law cited are not supported by the allegations in the Complaint.

Plaintiffs argue (Brief at 13) that individual defendants can be liable to employees under the FLSA if they exercise "operational control" over the business, but they fail to explain what "operational control" really means. As shown by the cases cited, "operational control" refers to substantial "hands-on" management of the business, and typically occurs in closely-held companies where the CEO or general manager has substantial, if not day-to-day, contact with employees, customers, or both. *See e.g., Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048, 2007 WL 313483 (S.D.N.Y Feb. 1, 2007) (Chinese restaurant owners liable for wages); *Shim v. Millennium Group,* No. 08-CV-4022, 2010 WL 409949 (E.D.N.Y. Jan. 27, 2010) (plaintiffs allege they worked under the personal direction of individual defendants); *Gayle v. Harry's Nurses Registry, Inc.,* No. CV-07-4672, 2009 WL 605790 at *9 (E.D.N.Y. Mar. 9, 2009) (Harry of Harry's Nurses Registry, with a mere 10 full-time employees, held personally liable because Harry "oversee[s] the whole operation") (citation omitted).

It needs little authority other than "judicial experience and common sense" to recognize that as an employer gets larger, the more removed executive management becomes from day-to-day "operational control." While employer status does not require "continuous monitoring" or "looking over [employees'] shoulders at all time" (*Herman v. RSR Servs., Ltd.,* 172 F.3d 132, 139-140 (2d Cir. 1999)), more specificity than is alleged in this Complaint is needed, particularly since Plaintiffs are quick to allege that the "System" and the members have more than 52,000 employees and is one of the "world's greatest" healthcare organizations. Most of the allegations in paragraphs 41-61 of the Complaint relating to the individual defendants, to the extent they allege something other than conclusions echoing one or another of the "tests" or

"factors," have nothing to do with "operational control" (*e.g.*, Dr. Pardes's fundraising (¶ 43), serving on boards dedicated to improving healthcare with information technologies (¶ 44), and promotion of healthcare legislation on a blog and television appearances (¶ 45). Likewise, Mr. Osten is alleged to be involved in non-managerial activities such as congratulating individuals who receive leadership awards (¶ 58), trying to improve "quality and compassionate care" of NYPH (¶ 53) and a "develop[ing] strategies dealing with regional, programmatic and health policy matters" (¶ 55). These activities do not give rise to any "operational control."

Plaintiffs cite *Gordon v. Kaleida Health*, No. 09-CV-3785, 2008 WL 5114217 (W.D.N.Y. Nov. 25, 2008), to support their pleading against Dr. Pardes and Mr. Osten. Plaintiffs provide no reason why that case, rather than the more recent and better reasoned *Tracy v. NVR, Inc.*, No. 04-CV-6541L, 2009 WL 3153150 (W.D.N.Y. Sept. 30) (*Tracy I*), *adopted in part*, 667 F. Supp. 2d 244 (W.D.N.Y. 2009) (*Tracy II*), should guide this Court's analysis. (*See* discussion in Moving Defendants' opening brief at 15-18.)

In fact, the *Tracy* decisions offer a far more compelling analysis than does the *Gordon* decision. *Gordon* was decided six months prior to the Supreme Court's decision in *Iqbal*, and thus lacks benefit of the guidance provided in that opinion. *Iqbal* specifically addressed the pleading standard for claims against individual defendants. *See* 129 S. Ct. at 1952 (addressing sufficiency of claims against federal officials and holding that plaintiff had not alleged sufficient facts to plausibly suggest her individual liability). *Tracy*, which was decided after the *Iqbal* decision was issued, relies heavily on that precedent in analyzing – and ultimately rejecting – allegations nearly identical to those here. *See Tracy I*, 2009 WL 3153150, at \*\*5-6; *see also Bravo v. Eastpoint Int'l, Inc.*, No. 99 Civ. 9474, 2001 WL 314622, at \*2 (S.D.N.Y. Mar. 30, 2001) (dismissing complaint against individual defendants because plaintiff failed to allege facts establishing a "power to control"). In light of *Iqbal* and *Tracy*, the allegations against Dr. Pardes and Mr. Osten should be dismissed.

## Conclusion

For the foregoing reasons, Defendants New York-Presbyterian Healthcare System, Inc., Herbert Pardes and Wayne Osten respectfully request that the Second Amended Complaint be dismissed as against them, without leave to replead.[4]

New York, New York
January 24, 2011

                        Respectfully submitted,

                        EPSTEIN BECKER & GREEN, P.C.

                        By: /s/ Kenneth J. Kelly
                            Kenneth J. Kelly
                            James S. Frank
                            Kenneth W. DiGia
                        250 Park Avenue
                        New York, New York 10177-1211
                         (212) 351-4500

                        WILLKIE FARR & GALLAGHER

                        By: /s/ Terence K. McLaughlin
                            Terence K. McLaughlin
                        787 Seventh Avenue
                        New York, NY 10019
                        (212) 728-8000

                        Attorneys for Defendants: New York-Presbyterian
                        Healthcare System, Inc., Herbert Pardes and Wayne Osten

---

[4] *See* NYPH's Reply Memorandum, fn 1.