UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 28, 2011

NAKAHATA, et al.,                     :
                                      :
            Plaintiff,                :          10 Civ. 2661 (PAC)
                                      :
       - against -                    :
                                      :          OPINION & ORDER
NEW YORK-PRESBYTERIAN                  :
HEALTHCARE SYSTEM, INC., et al.,       :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                      :
YARUS, et al.,                         :
                                      :
            Plaintiffs,               :          10 Civ. 2662 (PAC)
                                      :
       - against -                    :
                                      :
NEW YORK CITY HEALTH                    :
AND HOSPITALS CORPORATION, et al.,     :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                      :
MEGGINSON,                             :
                                      :
            Plaintiff,                :          10 Civ. 2683 (PAC)
                                      :
       - against -                    :
                                      :
WESTCHESTER MEDICAL CENTER, et al.,    :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                      :
ALAMU,                                 :
                                      :
            Plaintiff,                :          10 Civ. 3247 (PAC)
                                      :

```
                    - against -                    :
                                                   :
THE BRONX-LEBANON HOSPITAL                          :
CENTER, INC., et al.,                               :
                                                   :
                    Defendants.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

The Court considers motions to dismiss four related cases, brought by different plaintiffs against different defendants, but all containing strikingly similar allegations and deficiencies.[1] Each case is a putative collective and class action,[2] seeking to recover unpaid wages allegedly due to hourly employees for unspecified meal periods and breaks during which they worked, for preliminary and postliminary work, and for training sessions.  As a result, the plaintiffs maintain that they were denied applicable premium pay and overtime in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  They also assert claims under

---

[1] The same boilerplate complaint, with only minor alterations, has been filed in at least eight other cases in the metropolitan area: Rosser v. Continuum Health Partners et al., No. 10-cv-2633(PAC) (S.D.N.Y.); Spano v. Mem'l Sloan-Kettering Cancer Ctr. et al., No. 10-cv-2660(PAC) (S.D.N.Y.); Mott v. NYU Hosps. Ctr. et al., No. 10-cv-2663(PAC) (S.D.N.Y.); Matthews v. Mount Sinai Med. Ctr. et al., No. 10-2664(PAC) (S.D.N.Y.); Hackett v. Montefiore Health Sys., Inc. et al., No. 10-2682 (S.D.N.Y.); Pruell v. Caritas Christi, Nos. 09-cv-11722-GAO & 09-cv-11466-GAO (D. Mass.); Hinterberger v. Catholic Health, No. 08-cv-00380S (W.D.N.Y.); Cavallaro v. UMass Memorial Health Care, Inc., No. 09-cv-40141-FDS (D. Mass.).  One defendants has counted sixteen cases in total.
[2] Each Complaint defines the class to include "those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked," and further specifies that the allegations extend to all "hourly employees . . . such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resources pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, respiratory technicians, respiratory care specialists, respiratory care practitioners, clinical coordinators, medical assistants, home care nurses, home health aides, clinical case managers, midwives, and other health care workers" (See Alamu, Am. Compl. ¶¶ 65, 85; Megginson, Am. Compl. ¶¶ 62, 82; Nakahata, 2d Am. Compl. ¶¶ 63, 83; Yarus, Am. Compl. ¶¶ 53, 73.)

the Racketeer Influenced and Corrupt Organizations Act ("RICO") and common law for the same alleged conduct.[3]

**Facts and Allegations[4]**

1. **Nakahata v. New York-Presbyterian Healthcare System, Inc., et al.**, No. 10 Civ. 2661 (PAC)

Plaintiffs Masahiro Nakahata and Diana Gardocki are registered nurses employed by one of the defendants, The New York and Presbyterian Hospital ("NYPH"), pursuant to the terms of a collective bargaining agreement between NYPH and the New York State Nurses Association ("NYSNA"), which sets forth the comprehensive terms and conditions of their employment including salaries, entitlement to lunch and breaks, and mandatory grievance procedures. (Minksy Aff. ¶¶ 8, 9.)[5]  Nakahata and Gardocki filed a Second Amended Complaint on October 25, 2010, on their own behalf and on behalf of a putative class, against NYPH, New York-Presbyterian Healthcare System, Inc. ("System"),[6] Herbert Pardes, and Wayne Osten.  These defendants move to dismiss the complaint because (1) it fails to state any facts to support the FLSA and NYLL claims; (2) the FLSA, NYLL, and common law claims are barred by § 301 of the Labor Management Relations Act ("LMRA") because a collective bargaining agreement governs the terms of employment and Nakahata and Gardocki have failed to exhaust its

---

[3] In total, each Complaint alleges twelve claims: (1) violation of the FLSA; (2) violation of RICO; (3) violation of NYLL; (4) breach of an "implied oral" contract; (5) breach of an express oral contract; (6) breach of an implied covenant of good faith and fair dealing; (7) quantum meruit; (8) unjust enrichment/restitution; (9) fraud; (10) negligent misrepresentation; (11) conversion; and (12) estoppels with respect to the statute of limitations defenses.
[4] Given the generic quality of plaintiffs' complaints which contain no specifics or foundation for the legal claims alleged, certain basic information cited in this section, such as which sued entity employed the plaintiffs, is taken from the defendants' memoranda of law and used for explanatory purposes only.
[5] Notwithstanding the centrality of the collective bargaining agreements to employer-employee relations, plaintiffs neglect to attach them to the complaints.  The defendants in all four cases have attached them, or at least the relevant excerpts, as exhibits to their respective motions.  Given the collective bargaining agreements are integral to the issues raised by the complaints, they will be considered.  See I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc., 936 F.2d 759, 762 (2d Cir. 1991).
[6] Nakahata and Gardocki misuse this term to refer both to the named Defendant corporation and to a broader system of over 500 affiliated entities.  (See Nakahata Compl. ¶¶ 12, 18-20.)

mandatory grievance and arbitration procedures; (3) the RICO and common law claims are inadequately pleaded or legally insufficient and, anyway, preempted by the FLSA; and (4) Nakahata and Gardocki lack standing to pursue these claims on their own behalf or own behalf of the putative collective or class action.  (Nakahata, NYPH's Mem. in Supp. 2-3.)[7]  System and the individual defendants further move to dismiss for failing to set forth any facts supporting the conclusory allegation that they employ Nakahata and Gardocki.  Specifically, System does not have any employees and is prohibited by its corporate charter and by New York State regulations from operating hospitals or providing healthcare services.  (Nakahata, System, Pardes, & Osten's Mem. in Supp. 4.)  The individual defendants, senior executives of NYPH, contend that the Nakahata and Gardocki have alleged no facts to support the assertion that they control the daily employment activities of over 500 affiliated entities.

   2.   **Yarus, et al. v. New York City Health And Hospitals Corporation, et al.**, No. 10
        **Civ. 2662 (PAC)**

   Plaintiff Jonathan Yarus, a staff nurse, and Plaintiff Mohamed Ali, a respiratory therapist, are salaried employees who work at one of the eleven hospitals run by the New York City Health and Hospitals Corporation ("NYCHHC").  NYCHHC has a collective bargaining agreement setting forth the comprehensive terms and conditions of their employment, including mandatory grievance and arbitration procedures.  (Yarus, Mem. in Supp. 1, 2.)  Yarus and Ali filed an Amended Complaint on June 16, 2010, on their own behalf and on behalf of a putative class, against NYCHHC, Bellevue Hospital Center, Kings County Hospital Center, Jacobi Medical Center, Elmhurst Hospital Center, Harlem Hospital Center, Metropolitan Hospital Center, Lincoln Medical and Mental Health Center, North Central Bronx Hospital, Coney Island

---

[7] System and the individual Defendants filed their own motion to dismiss and also joined in NYPH's motion. (Nakahata, System, Pardes, & Osten's Mem. in Supp. 1.)

Hospital, Woodhull Medical and Mental Health Center, Queens Hospital Center, and Alan D. Aviles, the president of NYCHHC.  These defendants move to dismiss the complaint because (1) Yarus and Ali, as exempt employees, lack standing to assert the claims; (2) the collective bargaining agreement's mandatory grievance and arbitration procedures require dismissal of the FLSA claims; (3) the complaint fails to state a cause of action for a RICO violation; (4) the NYSLL sections cited do not apply to NYCHHC because it is a public benefit corporation; and (5) Yarus and Ali failed to provide notice of their state law claims.  (Yarus, Mem. in Supp. 2-3.)

### 3.  Megginson v. Westchester Medical Center, et al., No. 10 Civ. 2683 (PAC)[8]

Plaintiff Patricia Megginson is a registered nurse employed by one of the defendants, Westchester County Health Care Corporation ("WCHCC"), pursuant to the terms of a collective bargaining agreement between WCHCC and the NYSNA, which sets forth the terms and conditions of her employment, including mandatory grievance procedures.  (Megginson, Defs. Mem. in Supp. 1, 2.)  She filed an Amended Complaint on June 17, 2010, on her own behalf and on behalf of a putative class, against WCHCC, Westchester Medical Center, Maria Fareri Children's Hospital at Westchester Medical Center, Michael D. Israel, and Paul S. Hochenberg. These defendants move to dismiss the complaint because (1) it fails to set forth any facts to support an FLSA claim; (2) the common law claims are preempted by the FLSA and the existence of collective bargaining agreements, under which Megginson failed to exhaust her remedies; (3) Megginson lacks individual standing to pursue violations of the collective bargaining agreement; (4) Megginson failed to satisfy the notice and pleading requirements of the New York Public Authority Law, the WCHCC's enabling statute; and (5) the common law and NYLL claims are legally insufficient.  (Megginson, Mem. in Supp. 2-3.)

---

[8] Pursuant to its Order of January 10, 2011, the Court did not consider Megginson's untimely Memorandum in Opposition.  The Court notes, however, that it would not have made any difference, as the plaintiffs' briefing papers, like their complaints, are nearly identical.

4.  **Alamu v. The Bronx-Lebanon Hospital Center, Inc., et al.**, No. 10 Civ. 3247

   **(PAC)**

Plaintiffs Olusola Alamu and Jacqueline Cooper-Davis are employed by one of the

defendants, Bronx-Lebanon Hospital Center ("BLHC"), pursuant to the terms of a collective

bargaining setting forth the comprehensive terms and conditions of their employment including

salaries, entitlement to lunch and breaks, and grievance procedures.  (Alamu, Mem. in Supp. 7.)[9]

Alamu and Cooper-Davis filed an Amended Complaint on June 16, 2010, on their own behalf

and on behalf of a putative class, against BLHC,[10] Miguel A. Fuentes, Jr., and Sheldon Ortsman.

These defendants move to dismiss the complaint because (1) the FLSA, NYLL, and RICO

claims are insufficiently pleaded; (2) the FLSA preempts the NYLL overtime claim and the

RICO claim; (3) the common law claims are preempted by both the FLSA and the LMRA, and

fail as a matter of law.  (Id. 2.)

**Discussion**

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court assumes all facts

alleged in the complaint are true, and draws all reasonable inferences in favor of the plaintiff.

Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  Recitation of the

"elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .

While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations" to satisfy the notice requirements of Fed. R. Civ. P. 8(a).  Ashcroft v. Iqbal,

__ U.S. __, 129 S. Ct. 1937, 1949-50 (2009).  To avoid dismissal, the complaint must contain

"enough facts to state a claim to relief that is plausible on its face," that is to say, facts that

---

[9] Although the collective bargaining agreement was not attached to the Complaint, the Court takes judicial notice of
its existence.
[10] The complaint distinguishes BLHC from BLHC-Fulton Division and BLHC-Concourse Division, but in their
Memorandum in Opposition, Alamu and Cooper-Davis do not argue with BLHC's contention that they are the same
entity.  (See Alamu, Mem. in Supp. 1.)

"nudge[] [the plaintiff's] claims across the line from conceivable to plausible . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility, in turn, requires only that the allegations in the complaint "raise a reasonable expectation that discovery will reveal evidence" in support of the claim. Id. at 556; see also Arar v. Ashcroft, 585 F.3d 559, 617 (2d Cir. 2009).

Fed. R. Civ. P. 9(b) requires the plaintiff to plead fraud counts with particularity. The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Although Rule 9(b) permits intent to be averred generally, the plaintiff must supply "[a]n ample factual basis" giving rise to a "strong inference" of fraudulent intent, not mere speculation and conclusory allegations. Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).

The Court dismisses all four actions in their entirety. The very generalized allegations contain no facts to support the claims under the FLSA and NYLL; there is no basis for naming all hospitals within a system; there is no basis for personal liability; the RICO allegations are insufficient as a matter of law to state a claim, and the FLSA preempts RICO with regard to plaintiffs' complaints; and the state law claims are duplicative of the statutory claims and preempted by the FLSA and the LMRA.

## 1. FLSA and NYLL Claims

Plaintiffs' chief claims in all four actions are brought under the FLSA and NYLL. They allege that their hours worked were understated and so they were deprived of the FLSA's protection with regard to overtime hours. 29 U.S.C. §§ 206-07. Section 207 of the FLSA requires that an employer pay overtime at a rate of one and a half times an employee's regular rate for all hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). Any claims for

unpaid regular (i.e., non-overtime) wages, therefore, must be made under state labor law and/or the collective bargaining agreement.

Plaintiffs only cite to NYLL §§ 190(8) and 191 et seq., neither of which supports their claims for unpaid wages or overtime.  Section 190(8) is non-substantive and simply provides the statutory definitions of "week" and "month."  Section 191 deals only with the timing, not the amount, of payment.  See N.Y. Lab. L. § 191(d)(1) (providing that workers "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer"); see, e.g., Myers v. Hertz Corp., 624 F.3d 537, 545 (2d Cir. 2010).  These sections do not create any substantive entitlement to a particular wage, except for the wage already agreed upon.  Rather, § 220 provides the appropriate remedy for these claims, and the plaintiffs have not alleged such a claim, perhaps because it requires exhaustion of administrative remedies, which also was not pleaded.  See, e.g., Marren v. Ludlam, 790 N.Y.S.2d 146, 148 (N.Y. App. Div, 2d Dep't 2005).

Both the FLSA and the NYLL require that a complaint state more than vague legal conclusions to survive a Fed. R. Civ. P. 12(b)(6) motion.  At a minimum, it must set forth the approximate number of unpaid regular and overtime hours allegedly worked.  See Nichols v. Mahoney, 608 F. Supp. 2d 526, 548 (S.D.N.Y. 2009); Zhong v. August August Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007).  "Simply stating that Plaintiffs were not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA."  Acosta, 1995 U.S. Dist. LEXIS 14881, at *11.  The complaints here, however, fail to lay any factual foundation for determining the viability of their claims.  In other words, they contain no information that might nudge the allegations from speculative to plausible.  Rather, they merely assert that "Plaintiffs

8

and Class Members regularly worked hours both under and in excess of forty per week and were not paid for all these hours."

There are no factual allegations about when the alleged unpaid wages were earned (i.e., which lunches and breaks were worked through without proper compensation), or the number of hours allegedly worked without compensation—the heart of the claim. Nor do they allege any specific facts about the plaintiffs' employment, such as their dates of employment, pay, or positions.[11]  It should go without saying that the defendant in FLSA and NYLL claims must be the plaintiff's employer. The complaints are deficient due to the failure to specify which entity, among the many named defendants, employed the respective plaintiffs. Certainly if one entity did not pay an employee for overtime, that is an insufficient basis for naming every other health care facility affiliated with the employer. Finally, even if the claims of the plaintiffs have merit, which they do not, there is no basis for a collective or class action with regard to every other so-called hourly employee in the system from custodian and porter up to surgical specialist.

With regard to whether the claims made here are preempted by the collective bargaining agreements, given the broad, generic, unspecific allegations, it is impossible to say. The complaints contain no information about the nature of the work allegedly done; the circumstances of the training; or when, where and how the uncompensated hours of work occurred; all of which are necessary to determine whether they are compensable or require interpretation of the collective bargaining agreement. If any of the alleged violations hinges on the collective bargaining agreements' definition of the terms of employment, they must be

---

[11] Under the FLSA only hourly employees are eligible for overtime; salaried employees are exempt. See 29 U.S.C. § 213. Accordingly, a properly pleaded complaint must allege either that the plaintiffs are hourly employees or that plaintiffs, while salaried, were impermissibly treated as hourly employees when it benefited the defendant-employer, estopping him from invoking that exclusion. Plaintiffs attempt to skip over this vital step by simply alleging that they are hourly employees. (See, e.g., Nakahata 2d Am. Compl. ¶¶ 10, 191; Nakahata Mem. in Opp. 46 & n.31.) While this assertion may, as Defendants argue, turn out to be false, it is not grounds for dismissal at the pleading stage.

brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions.  See Vadino v. A. Valey Eng'rs, 903 F.2d 253, 266 (3d Cir. 1990) (dismissing an FLSA claim because "claims which rest on interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301").  For example, under the FLSA, work that is preliminary and postliminary to the principal activity of employment is non-compensable.  See 29 U.S.C. § 254(a)(2), (b)(1).  Such work, for which the plaintiffs claim compensation, can only be made compensable by the terms of the collective bargaining agreement.  Whether training is compensated may similarly require interpretation of the collective bargaining agreements.  In addition, activities such as "donning and doffing" protective clothing are only compensable under the FLSA (i.e., not preliminary or postliminary) if they are "integral and indispensable" to the principal activity.  See IBP, Inc. v. Alvarez, 546 U.S. 21, 29-30 (2005).  For this reason, it is essential that the complaints provide some indication of the nature of the uncompensated activity.

### 2.  RICO Claims

To state a RICO claim, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).  The RICO statute defines "racketeering activity" to include acts that are indictable under 18 U.S.C. § 1341, relating to mail fraud.  18 U.S.C. § 1961(1)(B).  Fed. R. Civ. P. 9(b) applies to RICO claims alleging mail fraud, and requires the plaintiff to plead (1) the existence of a scheme to defraud; (2) the defendants' knowing or intentional participation in the scheme to defraud; and (3) the use of the mail in furtherance of the scheme.  See, e.g., Anatian v. Coutts Bank (Switz.)

Ltd., 193 F.3d 85, 88 (2d Cir. 1999); S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996).

Initially, the plaintiffs claim mail fraud as the predicate act but fail to allege sufficient facts to satisfy the particularly required by Fed. R. Civ. P. 9(b). For example, there is no indication of how the mailing of the paychecks was essential to execute or further the scheme to defraud. See Acosta v. Yale Club of N.Y.C., No. 94-CV-0888, 1995 U.S. Dist. LEXIS 14881, at *2 (S.D.N.Y. Oct. 12, 1995). Rather, as the U.S. District Court for the District of Massachusettes observed in dismissing a nearly identical complaint, the mailing of the paychecks, if they did anything, "serve[d] to expose, not further, the alleged fraud." Cavallaro v. UMass Mem. Health Care Inc., No. 09-40152-FDS, 2010 U.S. Dist. LEXIS 96558, at *11 (July 2, 2010).

In addition, the provision of inaccurate paychecks and vague promises to pay employees for their work are insufficient to constitute fraud, particularly with regard to intent. See, e.g., Int'l Oil Field Supply Servs. Corp. v. Fadeyi, 825 N.Y.S.2d 730, 734 (N.Y. App. Div. 2d Dep't 2006). Plaintiffs also allege that, when questioned about deductions for meals and breaks, the defendants stated that the plaintiffs were being paid for the time to which they were entitled. (Nakahata 2d Am. Compl ¶ 81.) This is woefully short of the pleading requirements to allege when and where each misrepresentation was made, and who made the misrepresentation. Considering how many defendants are named in these complaints, the plaintiffs must specify the relevant actors and provide an appropriate timeframe in order to provide adequate notice.

The complaints are likewise vague in asserting that "defendants" qualify both as a person and as an enterprise within RICO, without specifying which defendant allegedly served which role. (See, e.g., Nakahata 2d Am. Compl. ¶¶ 117, 118.) Rather the plaintiffs argue in their

Memoranda of Law that the "enterprise" is the entire collection of over 500 entities affiliated

with, but not specifically named as, defendants; and say no more about the "person" except to

define it as "an individual or corporate entity that is 'employed by or associated with' the

enterprise."  (Nakahata, Mem. in Opp. 40 (quoting 18 U.S.C. § 1962(c)); Alamu Mem. in Opp.

16.)  This assertion is simply too vague to provide notice of a RICO claim.  See Anatian, 193

F.3d at 89.

### 3.  Common Law Claims

None of the common law claims also are sufficiently pled; the allegations are nothing

more than bald assertions.  See, e.g., Siroki v. Trs. of Columbia Univ., No. 97-7912, 1998 U.S.

App. LEXIS 22519, at *5 (2d Cir. Apr. 16, 1998) (affirming dismissal of a breach of contract

claim for failing to "allege the essential terms of the parties' purported contract 'in nonconclusory

language,' including the specific provisions of the contract upon which liability is predicated").

Additionally, even if they were properly pleaded, they would be preempted by the existence of a

collective bargaining agreement, which supersedes any possible oral or written contract entered

into at the time of employment.[12]  See Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211-

12 (1985); Tran v. Tran, 54 F.3d 115, 118 (2d Cir. 1995).

Finally, each specific common law claim has unique deficiencies.  The claims for breach

of implied and express oral contracts fail for lack of consideration because a pre-existing duty to

comply with the FLSA or NYLL cannot form the basis of a contract.  See Murray v. Northrop

Grumman Info. Tech., Inc., 444 F.3d 169, 178 (2d Cir. 2006); Goncalves v. Regent Int'l Hotels,

Ltd., 447 N.E.2d 693, 700 (N.Y. 1983).  New York does not recognize a separate cause of action

for breach of the implied covenant of good faith and fair dealing when breach of contract based

---

[12] Plaintiffs allude to some of these oral contracts being reduced to writing but have not attached any examples.
(See, e.g., Nakahata 2d Am. Compl. ¶ 140.)

on the same facts is also pleaded.  See, e.g., Harris v. Provident Life & Accident Ins. Co., 310

F.3d 73, 81 (2d Cir. 2002).  The claims for quantum meruit and unjust enrichment/restitution are

duplicative and irrelevant in light of the existence of a valid and enforceable written contract

(here, the collective bargaining agreement).  See Clark-Fitzpatrick, Inc. v. Long Island R. Co., 70

N.Y.2d 382, 388 (1987).  The claims for fraud and negligent misrepresentation fail because the

plaintiffs have not pleaded with the specificity required by Fed. R. Civ. P. 9(b), as discussed in

the RICO context.  The claim for conversion also fails because New York law requires the

plaintiff to have ownership, possession, or control of the money before its conversion.  See, e.g.,

ESI, Inc. v. Coastal Power Prod. Co., 995 F. Supp. 419, 433 (S.D.N.Y. 1998).  Finally, there is

no distinct equitable estoppel cause of action under New York law; rather, it is an affirmative

defense.  See, e.g., Tierney v. Omnicom Grp., No. 06 Civ. 14302 (LTS)(THK), 2007 U.S. Dist.

LEXIS 50435, at *29 (July 11, 2007).

**Conclusion**

      In short, these complaints contain no more than mere boilerplate assertions of various

legal conclusions.  Accordingly, they cannot survive the defendants' motions to dismiss.  The

very fact that this boilerplate complaint has been used, with identically vague and conclusory

allegations, in more than a dozen actions in New York and elsewhere is a vivid demonstrative of

how not to plead.  The generality of the boilerplate is at war with the requirement that sufficient

facts be alleged to make the claim plausible.  Further, all claims alleging fraud must be plead

with specificity.  If the plaintiffs replead, they may assert only those claims that arise under the

FLSA and NYLL, with the requisite factual specificity, including the fact that the claims are not

preempted by the collective bargaining agreement, which should be attached.  It would be futile

to allow an amendment with respect to the RICO and common law claims.  Moreover, the

complaint should not take a blunderbuss approach of alleged wrongs, multiple defendants who are not employers, and random citation of inapplicable statutes. A proper complaint must state under which statute each alleged wrong arose and that it covers the particular defendant allegedly responsible.

For the foregoing reasons, the defendants' motions for dismissal are GRANTED in each of the matters considered herein. In view of the dismissal, plaintiffs' motions for expedited discovery, collective action and class action status are moot. The Clerk of Court is directed to terminate these cases.

Dated:  New York, New York
      January 28, 2011

                                 SO ORDERED

                                 PAUL A. CROTTY
                                 United States District Judge